*In re* V.W., a Minor.—(The People of the State of Illinois, Petitioner-Appellee, *v.* V.W., Respondent-Appellant.)

First District (4th Division)   No. 81—2434

Opinion filed January 27, 1983.

Steven Clark and Elizabeth Clarke, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David A. Shapiro, and James Klein, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

Respondent, V.W., a minor, and two other minor respondents, Wayne Fair and Earl Carson, were adjudicated delinquent for committing the offenses of aggravated battery (Ill. Rev. Stat. 1979, ch. 38, par. 12—4) and compelling organization membership of a person under 17 years (Ill. Rev. Stat. 1979, ch. 38, par. 12—6.1). The trial court declared V.W. and his co-respondents wards of the court and committed them to the Juvenile Division of the Department of Corrections. The minors, Fair and Carson, are not parties to this appeal. V.W. appeals from the judgment of the trial court and raises the following issues for review: (1) whether the representation of all three minors in the same hearing by a single public defender denied respondent his right to effective assistance of counsel; (2) whether there was sufficient evidence to find respondent guilty of compelling organization membership of the victim, and (3) whether the statute which prohibits compelling organization membership by force is unconstitutionally vague and overbroad.

We reverse and remand.

A petition for adjudication of wardship of V.W., Wayne Fair and Earl Carson was filed by the State on May 12, 1981. At the adjudication hearing on August 27, 1981, the State's evidence showed the following: on April 24, 1981, at about noon, 15-year-old Christopher Mc-

Bee was in the schoolyard of the Beethoven grammar school on Chicago's south side. McBee was approached by V.W., Wayne Fair, Earl Carson and another boy. The four boys crossed their fists in a particular way and V.W. asked McBee, "What do you ride?" According to McBee, that meant that V.W. and his companions were inquiring about McBee's gang affiliation. When McBee denied belonging to any gang, V.W. pulled out a chain approximately one inch in diameter and two feet in length. McBee tried to run away but V.W. and his companions caught him. V.W. beat McBee about the head and back with the chain. One of V.W.'s co-respondents, Earl Carson, held McBee while V.W. and the others kicked and beat him. Mr. Griffen, the school's truant officer, was on the playground during the attack.

McBee was able to free himself and ran to the principal's office. While he was talking with the principal, V.W. and the three other boys came into the office and continued beating him. The principal called the police, but the four assailants fled before the police arrived. However, later, in the schoolyard, McBee pointed out Carson to Officer Yancy of the Chicago police department as one of the assailants. Carson was taken into custody at that time.

At the adjudication hearing, neither the truant officer, Mr. Griffen, nor the principal, Mrs. Folks, testified. McBee stated that V.W. and the three others beat him to force him to join the El Rukin street gang. McBee said that he was not and had never been a member of a gang. At the hearing, McBee identified all three respondents as his assailants.

Chicago police officer Earl Yancy testified that he received a call on April 24, 1981, in which it was reported that there were several armed teenagers in the principal's office at the Beethoven school. When he arrived at the school, the principal told him that several boys had come into her office and had attacked McBee in her presence. Yancy noticed that McBee had bruises, cuts and what appeared to be marks from a chain on his head, neck and shoulders, and his face was swollen. Yancy took McBee to the schoolyard where he pointed out Carson as one of the assailants, whom Yancy then arrested.

All three respondents were represented by the same assistant public defender at the adjudication hearing in which they were all found to be delinquent. Each respondent testified in his own behalf. Carson stated that he was at the Beethoven school on the date in question but did not see McBee that day and knew nothing of the incident in which McBee was beaten. Fair stated that he was not at Beethoven school at any time on the day in question and was attend-

ing class at DuSable high school at the time of the incident.

Respondent V.W. testified that he was in the schoolyard with Carson, Fair and another boy when McBee and several other boys approached. McBee and his friends identified themselves as members of the Disciples gang and then attacked V.W. and his three companions. V.W. stated that McBee stabbed another boy during the fight. He also said that he used the chain in self-defense when McBee attacked him. V.W. denied trying to force McBee to join a gang.

At the conclusion of the testimony, the court made a finding of delinquency on both counts and adjudicated all three minor respondents wards of the court.

On September 15, 1981, when respondent V.W. appeared before the court for sentencing, he made a motion for a new trial. His attorney argued that because of the inconsistent statements of the respondents at the adjudication hearing, and the failure of the attorney representing all three respondents to withdraw, V.W. was denied his right to effective counsel. In denying the motion, the judge noted that no motion for a mistrial had been made either at the hearing or immediately afterward, and there was no apparent conflict at the time. V.W. was sentenced to the Juvenile Division of the Department of Corrections.

On appeal, V.W. argues that representation of joint respondents by a single public defender in the same hearing denied him his right to effective assistance of counsel. In support of this argument, V.W. states that the alibi defenses given by the other two co-respondents conflicted with his testimony. Specifically, the co-respondents testified that they were elsewhere at the time of the incident, while V.W. testified that all three were present but that he (V.W.) acted in self-defense. V.W. gave no account of the involvement of his two co-respondents other than their presence at the scene.

The State argues that V.W. has not shown an actual conflict of interest such as is necessary to show that his representation by the public defender was inadequate. We disagree with this argument.

While V.W.'s co-respondents gave alibi testimony concerning their whereabouts on the day of the attack, V.W.'s testimony placed them at the scene. The defense counsel was thus presented with a situation in which it appeared that at least one of his three clients was lying. He could not examine his own clients in detail to bring out the truth. For example, a detailed direct examination of Fair establishes his alibi but suggests that V.W. is lying about Fair's presence at the scene of the crime. Thus, to adequately represent Fair, the defense attorney may have weakened his defense of V.W. On the other hand, a detailed

persuasive examination of V.W. destroys the alibi of Fair. A detailed examination of both establishes that one of the two is not telling the truth. A decision not to put any of them on the witness stand would deprive the accused minors of their right to tell their versions of the incident. This is a classic dilemma which no defense attorney should face. Moreover, since the defense attorney was representing all three minors, he could hardly take an adversarial posture and vigorously cross-examine his own clients.

The closing arguments also presented a problem for the defense attorney. While it was possible for him to argue vigorously that V.W. acted in self-defense, he could hardly argue with the same vigor that the two co-respondents' alibis were to be believed, without implying that V.W. had lied under oath when he said that the others were present.

While it is true that it is not *per se* violative of constitutional guarantees for a single attorney to represent co-respondents, joint representation of conflicting interests is suspect (see *Holloway v. Arkansas* (1978), 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173). In *Holloway*, three defendants, charged with rape and robbery, were represented at their consolidated trial by a single public defender. One of the defendants had initially made a confession in which he stated that he had acted as a lookout while the other two defendants committed the crimes but that he had not actually taken part himself. He later recanted the confession. The trial court ruled the confession admissible but ordered the deletion of references to the co-defendants. At trial, each defendant testified in his own behalf. Each denied involvement in the crimes and offered alibis for their whereabouts at the time of the crimes. The defense attorney could neither examine them regarding the truth of their statements nor assume an adversarial role and cross-examine each one. All three defendants in the case were convicted. On appeal to the Supreme Court of Arkansas and, later, to the United States Supreme Court, defendants argued that representation by a single attorney violated their constitutional right to effective assistance of counsel. The United States Supreme Court agreed and reversed the convictions.

In a case of joint representation of conflicting interests, the evil is in what the attorney finds himself compelled to *refrain* from doing. (Emphasis added.) (435 U.S. 475, 490, 55 L. Ed. 2d 426, 438, 98 S. Ct. 1173, 1182.) We find this principle to be applicable to the instant case.

We hold that under the facts of this case respondent was denied effective assistance of counsel. The adjudication of delinquency

must, therefore, be reversed.

We next address respondent's contention that there was insufficient evidence to find him guilty of compelling organization membership of a person under 17 years of age. Respondent argues that the beating was an act of self-defense; but, even if it was not, the most that the trial court could have concluded from the evidence was that McBee was beaten because he was not a member of a gang and not that he was beaten for recruitment.

■ It is undisputed that the victim was severely beaten. The victim testified that he was being recruited to join the El Rukin street gang and that was the purpose of the beating. He also testified that he knew respondent and the other assailants to be members of that gang. The respondent testified that he was not recruiting McBee for a gang and the beating was an act of self-defense. The issue, thus, presents a question of credibility. On questions involving credibility, we will not substitute our judgment for that of the trier of fact unless the evidence is so improbable as to raise a reasonable doubt as to respondent's guilt. (*People v. Lindsey* (1979), 72 Ill. App. 3d 764, 773-74, 391 N.E.2d 382, 389.) We find no such improbability here. It was reasonable for the trial court to make a finding of guilt based on the evidence and the logical inferences that flowed therefrom.

We hold that there was sufficient evidence from which a finding of guilty of compelling organization membership could be made. However, in light of our holding on respondent's first issue, we remand the case to the circuit court of Cook County for a new adjudication hearing. In light of these findings, it is unnecessary to determine, at this time, the constitutionality of the statute.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the case is remanded for a new hearing.

Reversed and remanded.

LINN and JIGANTI, JJ., concur.