THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT W. WARD, Defendant-Appellant.

Second District    No. 79-672

Opinion filed April 21, 1981.

Robert W. Ward, of Joliet, *pro se,* and Mary Robinson and Kyle Wesendorf, both of State Appellate Defender's Office, of Elgin, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Robert L. Thompson, Assistant State's Attorney, and Phyllis J. Perko and Marshall Stevens, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE REINHARD delivered the opinion of the court:
Defendant, Robert W. Ward, was charged by a four-count information with unlawful restraint, intimidation, aggravated battery and battery.

During the jury instructions conference, the State was given leave, over defendant's objection, to amend the aggravated battery information. Defendant was found guilty on all charges and was sentenced to concurrent terms of three years' imprisonment for unlawful restraint, five years' imprisonment for intimidation and five years' imprisonment for aggravated battery. Defendant appeals from these convictions.

The charges involved herein all arose out of an incident that occurred in Glen Ellyn, Illinois, on December 3, 1978. At trial, Margaret Marsden, the complaining witness, testified as follows. On December 2, 1978, shortly before midnight, she went to the lounge in the Glen Ellyn Holiday Inn, where she ordered a glass of wine. Shortly thereafter, the waitress brought her another glass of wine, which a man sitting at the bar had bought for her. Mrs. Marsden and the man then moved a seat closer to each other and talked for a half hour to 45 minutes. Mrs. Marsden described the man as white, slightly built, weighing less than 150 pounds, with longish hair, a receding hairline and dressed in a plaid flannel shirt and plaid pants. In court, she identified the defendant, Robert Ward, as the man she met in the Holiday Inn lounge.

Approximately 1 a.m., Mrs. Marsden left the lounge and returned to her automobile, which was in the parking lot of the Holiday Inn. After she had started the car, the defendant opened the passenger side door of the vehicle, got in the front seat and grabbed the keys out of the ignition. Mrs. Marsden testified that the defendant then put his hands on her neck, slapped her in the face, pulled her hair and told her to do what he said or she would be killed. The defendant then forced Mrs. Marsden to remove her pants and "play with herself." At 3 a.m., after being in the car for approximately two hours, Mrs. Marsden managed to free herself and ran into the Holiday Inn for help. At that time there were visible welts on her neck.

Glen Ellyn police officer Lawrence Ryan testified that on December 5, 1978, he went to defendant's residence, advised defendant of his *Miranda* rights and asked him if he had been at the Holiday Inn lounge at the date and time in question. Defendant responded that he had gone to the Holiday Inn that evening to have a drink and pick up some cigarettes. Officer Ryan further testified that defendant was wearing plaid pants and that his residence was approximately three-quarters of a block from the Holiday Inn.

The defendant's wife, Mary Ward, testified that her husband worked every Saturday from 3 p.m. to 1 a.m. and that on the evening in question, after getting home from work, her husband left the house to buy some cigarettes, but that he wasn't gone long. Defendant testified that on the day in question he was employed at the Beef and Barrel in Lombard, Illinois; that after getting home from work at about 1:30 a.m. he went to

the Holiday Inn to get cigarettes; that he had one drink at the Holiday Inn and went home; and that he had never seen Mrs. Marsden before her appearance in court.

Three issues are presented for review:

(1) Whether the trial court erred in permitting the State to amend the aggravated battery information during the jury instructions conference;

(2) Whether the defendant was afforded effective assistance of counsel; and

(3) Whether the trial court erred in entering judgment on both the battery conviction and the aggravated battery conviction.

## I.

During the jury instructions conference, the State tendered a definitional instruction on the offense of aggravated battery, which described the place of the offense as "about public property." The trial judge refused to give the tendered instruction since, in his opinion, the alleged acts did not take place on "public property" but rather were at a place of "public accommodation." Although refusing the State's tendered instruction, the trial court did permit the State, over defendant's objection, to amend the aggravated battery information to state that the offense took place "about a public place of accommodation" rather than "about public property" as originally charged. An instruction defining the place of the offense as "about a public place of accommodation" was then given to the jury.

The resolution of this issue turns on our interpretation of section 111—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 111—5), which provides as follows:

> "An indictment, information or complaint which charges the commission of an offense in accordance with Section 111—3 of this Code shall not be dismissed and may be amended on motion by the State's Attorney or defendant at any time because of formal defects, including:
>
> (a) Any miswriting, misspelling or grammatical error;
>
> (b) Any misjoinder of the parties defendant;
>
> (c) Any misjoinder of the offense charged;
>
> (d) The presence of any unnecessary allegation;
>
> (e) The failure to negative any exception, any excuse or proviso contained in the statute defining the offense; or
>
> (f) The use of alternative or disjunctive allegations as to the acts, means, intents or results charged."

More specifically, the question which we address is whether the information herein was amended because of a "formal defect" within the scope and meaning of section 111—5. If there was merely a formal defect,

section 111—5 permits amendment of the information "at any time." (Ill. Rev. Stat. 1979, ch. 38, par. 111—5.) However, if the defect in the original information was "material" or "fundamental" (*People v. Troutt* (1977), 51 Ill. App. 3d 656, 366 N.E.2d 370), or "substantive" (*People v. Allen* (1972), 8 Ill. App. 3d 176, 289 N.E.2d 467), or related to an "essential" part of the information (*People v. Coleman* (1971), 49 Ill. 2d 565, 276 N.E.2d 721), the information cannot be amended.

Defendant contends on appeal, as he did in the trial court, that the State's failure to properly plead the place of the alleged offense is a fundamental, substantial defect which precludes amendment of the information pursuant to section 111—5. The State, on the other hand, argues that the amendment of the aggravated battery information to state "public place of accommodation" rather than "public property" was merely a formal change allowable under section 111—5. After reviewing the facts and the applicable law involved herein, we are compelled to agree with the State that the defect in the information was formal and, therefore, amendable pursuant to section 111—5.

■■ It is clear that the list of formal defects in section 111—5 is not exclusive (*People v. Jones* (1973), 53 Ill. 2d 460, 292 N.E.2d 361; *People v. Troutt* (1977), 51 Ill. App. 3d 656, 366 N.E.2d 370) and that the word "including" which precedes the list of formal defects should be read as "including but not limited to" (*People v. Hall* (1964), 55 Ill. App. 2d 255, 204 N.E.2d 473.) Therefore, although the defect involved herein does not fit into any of the precise categories set out in section 111—5, it is nevertheless, in our opinion, an amendable defect since it does not constitute a substantive amendment to the information.

■■■ Defendant was charged with aggravated battery solely because of the situs of the alleged offense pursuant to section 12—4(b)(8) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(b)(8)), which provides in pertinent part:

"(b) A person who, in committing a battery, commits aggravated battery if he either:

\* \* \*

(8) Is, or the person battered is, on or about a public way, public property or public place of accommodation or amusement \* \* \*."

Obviously, our legislature was of the belief that a battery committed in an area open to the public, whether it be a public way, public property or public place of accommodation or amusement, constitutes a more serious threat to the community than a battery committed elsewhere. (See Ill. Ann. Stat., ch. 38, par. 12—4(b)(8), Committee Comments, at 465 (Smith-Hurd 1979).) As we interpret this statutory language, the essential allegation for a charge under section 12—4(b)(8) is that the battery occurred in a public area. Whether the property was actually publicly owned and,

therefore, "public property" rather than a privately owned "public place of accommodation" is irrelevant; what is significant is that the alleged offense occurred in an area accessible to the public.

Significantly, defendant has not argued in his brief that he was in any way prejudiced by the amendment of the information, nor can we understand how he could have been prejudiced. He clearly had adequate notice of the essential elements of the offense, yet at no time did he appear to base his defense on the nature of the property where the offense occurred. Absent some showing that defendant was not adequately informed of the alleged offense by the information or that the amendment took defendant by surprise, and absent a showing of prejudice, we cannot find that the trial court erred in permitting the information to be amended. See *People v. Coleman* (1971), 49 Ill. 2d 565, 276 N.E.2d 721.

In *Coleman*, our supreme court held that, in a prosecution for murder, allegations regarding the means used to accomplish the killing were not essential, but rather were a formal part of the indictment which were subject to amendment under section 111—5. In so deciding, the court quoted language from an earlier decision, *People v. Cohen* (1922), 303 Ill. 523, 135 N.E. 731, for support:

"In *People v. Cohen*, 303 Ill. 523, this court stated at page 525: 'Great niceties and strictness of pleading should only be countenanced and supported when it is apparent that the defendant may be surprised on the trial, or unable to meet the charge or make preparations for his defense for want of greater certainty or particularity. [Citation.] The criminal law is fast outgrowing those technicalities which grew up when the punishment for crime was inhuman and when it was necessary for the courts to resort to technicalities to prevent injustice from being done.' " (49 Ill. 2d 565, 570, 276 N.E.2d 721, 723-24.)

Similarly, we view the defect involved herein as a technical one not changing a substantive element of the information and, therefore, one which is amendable under section 111—5. In contrast, an allegation regarding the "public" nature of the place where the alleged battery occurred is essential to an information charging a violation of section 12—4(b)(8), and the failure to allege that fact could not be considered an amendable formal defect.

## II.

The second issue presented for review is whether defendant was denied the effective assistance of counsel at trial. Defendant argues on appeal, as he did in his supplemental motion for new trial, that his trial counsel demonstrated actual incompetence by failing to adequately investigate potential alibi witnesses and by failing to call as a witness at

the sentencing hearing a probation officer who would have testified as to defendant's good character.

In a post-trial hearing on defendant's supplemental motion for a new trial, defendant testified that there were a number of individuals that he had worked with at the Beef and Barrel restaurant whom he wanted to call as alibi witnesses to testify that he was working at the time the crime was committed, but who were not called as witnesses. Defendant also testified that he wanted certain witnesses, including Mr. Kozad of the probation department, to testify on his behalf in mitigation, but that his appointed counsel never called those parties to testify. However, defendant did acknowledge that he only provided first names for most of these individuals and that he was out on bond for two or three weeks during which time he was free to contact potential witnesses.

Defendant's appointed counsel testified that defendant gave him the names of several former Beef and Barrel employees to contact as possible witnesses, but that he did not give the last names or addresses of most of those individuals; that he called Judy Priest, the assistant manager of the restaurant where defendant had been employed; that Judy Priest informed him that the Beef and Barrel restaurant had closed at the end of November and that she was certain the restaurant was not open on December 2 or 3; and that Judy Priest had no knowledge of where the former employees of the restaurant were. Finally, defendant's trial counsel testified that defendant never asked him to call Robert Kozad, or any other witness, to testify on his behalf at the sentencing hearing.

Our supreme court recently reaffirmed its traditional standard for determining when trial counsel is so inadequate as to warrant granting a defendant a new trial:

> "The inadequacy of a defendant's trial counsel entitles him to a new trial if his appointed counsel was actually incompetent, as reflected in the performance of his duties as trial attorney, and if this incompetence produced substantial prejudice to the defendant without which the result of the trial would probably have been different." (*People v. Greer* (1980), 79 Ill. 2d 103, 120-21, 402 N.E.2d 203, 211.)

Directly on point with the issue presented here, the court stated further:

> "The failure to interview witnesses may indicate actual incompetence (*People v. Witherspoon* (1973), 55 Ill. 2d 18), particularly when the witnesses are known to trial counsel and their testimony may be exonerating (*People v. Stepheny* (1970), 46 Ill. 2d 153). In this case, however, the defendant does not point to any potentially favorable testimony which his trial counsel failed to investigate * * *." 79 Ill. 2d 103, 123, 402 N.E.2d 203, 212-13.

■■ From a careful review of the record, we have concluded that there was no actual incompetence involved, much less substantial prejudice to the defendant. Defense counsel contacted defendant's supervisor at the Beef and Barrel restaurant to discuss the possibility of using her as a witness at trial. However, she indicated with certainty that the restaurant had closed permanently on the last day of November. Faced with this knowledge from someone in a position of authority at the restaurant, and from someone that defendant indicated could verify the dates the restaurant was open and closed, defense counsel cannot be criticized for failing to further investigate defendant's supposed alibi defense. This is especially true since defendant only provided counsel with first names and no addresses. In short, this is not a case where "the witnesses are known to trial counsel and their testimony may be exonerating." (*People v. Greer* (1980), 79 Ill. 2d 103, 123, 402 N.E.2d 203, 212-13.) If such witnesses did in fact exist, their discovery likely would have been fruitless given the fact that, by all indications, the restaurant was closed at the time the crime was committed.

Finally, defendant alleges that defense counsel failed to call certain witnesses at the sentencing hearing to provide evidence in mitigation, even though requested to do so by defendant. Defense counsel testified that defendant never indicated to him that he wanted to call Robert Kozad of the probation department, or any other witness, to testify at the sentencing hearing. Obviously, one of the two is not telling the truth. However, the determination of the credibility of witnesses is a matter for the trial judge to determine and, unless his determination thereon is manifestly erroneous, his decision should be upheld. *People v. Harper* (1969), 43 Ill. 2d 368, 253 N.E.2d 451.

Accordingly, we find no support in the record for defendant's contention that he was denied effective assistance of counsel at trial.

### III.

The final issue presented for review is whether the trial court erred in entering judgment on both the battery conviction and the aggravated battery conviction. Since the State has conceded on appeal that the battery conviction should be vacated as a lesser included offense of aggravated battery (see *People v. Cole* (1977), 47 Ill. App. 3d 775, 362 N.E.2d 432), we need not address the merits of this issue in detail, but merely modify the judgment to vacate the judgment of conviction on the charge of battery. That conviction is hereby reversed.

Affirmed in part, reversed in part.

SEIDENFELD, P. J., and NASH, J., concur.