THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD LEE KAMP, Defendant-Appellant.

Third District No. 3—84—0336

Opinion filed March 27, 1985.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, for appellant.

William Herzog, State's Attorney, of Kankakee (John X. Breslin and Rita Kennedy Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE SCOTT delivered the opinion of the court:

The defendant, Ronald Lee Kamp, appeals from his conviction of felony murder. The defendant was first convicted in 1981 of murdering Morristine Calmes. This conviction was reversed on appeal and remanded for retrial. The defendant was again convicted of Calmes' murder on April 4, 1984, following a bench trial. The trial court sentenced the defendant to 20 years' imprisonment.

The victim's body was found by Kankakee police officers on August 2, 1980. The body was face down in a pool of water in a drainage ditch. The pool of water was estimated to be 10 inches deep. The drainage ditch traversed a small park.

The Kankakee police were summoned to the scene by Carleton and Margaret Koch. The Koch's home was located next to the park. At approximately 2:20 a.m. on August 2, 1980, the Kochs were awakened by the sound of a woman screaming. They also heard her moan "Oh my God." Mr. Koch immediately called the police while Mrs.

Koch kept watch at the bedroom window. This window looked out onto the park. By the time Mr. Koch returned to his bedroom, a police car was already approaching the park.

Kankakee police officer Lieutenant Floyd Reynolds was conducting a security check of a grammar school located two blocks from the park. He received a call to go to the park. As he was driving through the area, Mr. Koch emerged from his home and flagged the lieutenant. As Reynolds and Mr. Koch were standing in the Koch's driveway talking, Mr. Koch noticed a man hiding behind a tree in the park. At the same time, Mrs. Koch called from the window that a man was crouching behind the tree.

Lieutenant Reynolds returned to his car and drove toward the point where the man was standing. The man then began to run. Reynolds pursued him by car but lost him among nearby homes. Reynolds then returned to the Koch home. By this time, both Mr. and Mrs. Koch had noticed a bicycle lying in the park. Reynolds walked into the park with Mr. Koch. The two men sighted the victim's body lying in the water at the bottom of the drainage ditch. Reynolds went to the body and drew the victim's face out of the water. He felt for a pulse but found none. He then radioed for assistance. Reynolds estimated that five to six minutes elapsed between the time he saw the man in the park and the time he located the body.

Both Mr. and Mrs. Koch identified the man they saw in the park as the defendant. The defendant lived near the Kochs. Mr. Koch also identified the bicycle found in the park as belonging to the defendant.

Consequently, at approximately 3 a.m., Kankakee police officers arrested the defendant in his home. At the time of his arrest, the defendant's hair and underwear were wet. The officers found clothing matching that described by Reynolds and the Kochs as the apparel of the man in the park. This clothing was also wet.

The State presented the testimony of forensic pathologist Dr. Edward Shalgos. Shalgos testified that the victim's death was caused by drowning.

■ The defendant raises three issues on appeal. He argues first that the State failed to prove the *corpus delicti* beyond a reasonable doubt and that the defendant caused the victim's death. To establish the *corpus delicti* the State must prove the death of the victim and that the death was caused by a criminal agency. The State must additionally prove that the defendant was that criminal agency. *People v. Wilson* (1948), 400 Ill. 461, 81 N.E.2d 211.

The defendant argues that the State failed to prove that Calmes' death was caused by a criminal agency.

Circumstantial evidence may be used to prove *corpus delicti*. *People v. Hansen* (1963), 28 Ill. 2d 322, 192 N.E.2d 359, *cert. denied sub nom. Spilotro v. Illinois* (1964), 376 U.S. 908, 11 L. Ed. 2d 608, 84 S. Ct. 664.

In the instant case, Calmes' brother and sister testified that they saw her on the night of her death. Calmes was healthy and active just hours before she died.

Dr. Shalgos testified regarding the condition of Calmes' body at the time of the autopsy. Shalgos stated that there was no disease or trauma found during the autopsy which would have caused Calmes to collapse into the drainage ditch. Shalgos further testified that the physical evidence showed that Calmes was attempting to breathe even as she was drowning. This was shown by the significant hemorrhaging of small blood vessels in the victim's head and by the fact that the victim swallowed and regurgitated water from the ditch. Shalgos testified that the body of a person who drowned while unconscious would not have the massive, explosive changes he found in Calmes' body. It was Shalgos' opinion that this medical evidence demonstrated that the victim's face was forcibly held in the water while she was still alive and vigorous.

The defendant asserts that the testimony of Dr. James Blanding created a reasonable doubt that the victim had been forcibly drowned. However, Dr. Blanding acknowledged both that he was not a forensic pathologist and that he never examined the body. Blanding clearly stated that he could not determine whether the drowning was accidental or the result of a homicide.

The victim's collapse could not be explained as the result of illness or trauma. Dr. Shalgos presented medical evidence indicating that the victim was actively trying to inhale air while she was taking in water. Given this unrebutted evidence, we find that the State proved the *corpus delicti* beyond a reasonable doubt.

The defendant further argues that the State failed to prove that he was the criminal agency which caused the victim's death. We find no merit in this argument. The defendant was identified by witnesses as being present in the park at approximately the time of the victim's death. He was in the park during the early morning hours. He was the only person observed in the park. He was seen coming up from the ditch where the victim was found. When arrested, the defendant's hair and discarded clothing were wet. This evidence was more than sufficient to establish that it was the defendant who caused the victim's death.

The defendant's second argument on appeal is whether the State

proved that the offense occurred on or about a public way or property. The defendant was charged with felony murder. The underlying felony was aggravated battery as set forth in section 12—4(b)(8) of the Criminal Code of 1961. (Ill. Rev. Stat. 1981, ch. 38, par. 12—4(b)(8).) That section defines aggravated battery, in relevant part, as a battery occurring on or about a public way or public property.

 The defendant asserts that because no evidence as to the ownership of the park was presented, the State failed to prove the element of public way or public property. In effect, the defendant argues that the term "public" in section 12—4(b)(8) must be construed to mean owned by a public entity.

However, the courts of Illinois have not interpreted the language of section 12—4(b)(8) so narrowly. The court in *People v. Ward* (1981), 95 Ill. App. 3d 283, 419 N.E.2d 1240, found that the essence of a charge under section 12—4(b)(8) is that a battery occur in a public area. The court continued: "[w]hether the property was actually publicly owned and, therefore, 'public property' rather than a privately owned 'public place of accommodation' is irrelevant; what is significant is that the alleged offense occurred in an area accessible to the public." 95 Ill. App. 3d 283, 287-88, 419 N.E.2d 1240, 1244.

 In the instant case, the evidence clearly established that the park where the victim was killed was open to the public. Mrs. Koch testified that neighborhood children played there. Officer Reynolds testified that the park was open to the public until closing time each evening. The State proved the statutory elements of the underlying felony of aggravated battery.

 The defendant's final argument on appeal is that the trial court erred in allowing evidence that the victim's anus had been penetrated. The defendant asserts that this evidence was improper because it constituted evidence of another crime, deviate sexual assault, with which the defendant was not charged.

Evidence of other offenses is admissible only if relevant for some purpose other than to show propensity to commit a crime. (*People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.) In deciding whether to admit evidence of another crime, the trial judge must balance the relevancy of the evidence offered against its tendency to inflame or prejudice the trier of fact. *People v. Bailey* (1980), 88 Ill. App. 3d 416, 410 N.E.2d 545.

We initially reject the defendant's final argument because we find that the evidence of anal penetration did not constitute evidence of another offense. Dr. Shalgos testified that there was no evidence as to whether the victim consented to the penetration. There was no evi-

dence of use of force or injury to the victim. Similarly, there was no evidence that linked the defendant to the object used in the penetration.

However, even if we consider evidence of the penetration to be evidence that the defendant sexually assaulted the victim, we find that the evidence was properly admitted. Dr. Shalgos testified that the penetration occurred just prior to death as evidenced by the physical state of the anus. The defendant attempted to elicit testimony from Shalgos and Dr. Blanding that the victim had been dead for some time before her body was discovered. If the evidence of penetration is proof of deviate sexual assault by the defendant, then the evidence was relevant to establish that the victim was still alive when she was with the defendant. This relevancy outweighed any prejudice to the defendant.

For the foregoing reasons, the judgment of the circuit court of Kankakee County is affirmed.

Affirmed.

HEIPLE, P.J., and BARRY, J., concur.