THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RONALD WILLIAMS, Defendant-Appellant.

First District (2nd Division)   No. 85—3411

Opinion filed September 22, 1987.

614

Paul P. Biebel, Jr., Public Defender, of Chicago (Andrea Monsees, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Defendant appeals his conviction on two counts of aggravated battery and his sentence of five years' imprisonment following a bench trial. He asks that this court determine whether: (1) evidence indica-

ting that a battery occurred in a private parking lot proved that the offense occurred on or about a public way; (2) the circuit court erred in permitting the State to ask leading questions to establish that the victim suffered great bodily harm; (3) defendant was proved guilty beyond a reasonable doubt; (4) multiple convictions were erroneously entered when the State alleged the same acts in both counts.

On January 31, 1985, Kimmar Crosby (Kimmar), age 28 or 29, was drinking whiskey with defendant, her boyfriend, at her apartment at 5312 S. Blackstone in Chicago. They argued verbally for about 10 minutes and then started physically fighting. According to Kimmar, defendant first slapped her and she tried to hit him back. Defendant knocked her down in the washroom after her nose started bleeding. She asked him to leave and he did so.

One hour later, defendant returned to the apartment and Kimmar let him in. They left together. Kimmar did not wear gloves although it was below zero that day and snow was on the ground. They began arguing as they left. After five minutes of argument, they began fighting in the parking lot adjacent to Kimmar's apartment building. Building residents and their guests used the parking lot. Kimmar testified that defendant started the fight by punching her with an open fist. She fell to the ground. Defendant then hit her on the face and chest and Kimmar lost consciousness. She did not see defendant kick her.

Elvira Mayes, owner of a nursery school, pulled into a parking lot near the Butler Restaurant, at 1411 E. 53rd Street, at approximately 6:30 p.m. From 20 to 25 feet away, she saw a man whose arm was going up over his head and down in a striking fashion, three or four times. She entered the restaurant with her niece and informed the owner that something was going on in his parking lot. She did not live in an apartment building adjacent to the parking lot nor could she identify defendant.

Jerome Butler, an attorney, left his restaurant at about 6:30 p.m., walked around a pickup truck and observed defendant kicking a woman on the ground hard on the abdomen three or four times. Butler was only six to eight feet away and heard defendant say, "Get up, bitch." The woman's face appeared to be a bloody mess and Butler called the police and then returned outside and saw police arrest defendant. Butler did not know defendant prior to this incident. He did not believe the kicking was merely an attempt to arouse the woman to get up. He saw nothing in defendant's hands. People from the restaurant used the parking lot.

Sgt. Randall McCarrel of the University of Chicago security department received a flash message about 6:30 p.m. that a man was

beating a woman. When he arrived at the parking lot, he saw defendant raising and lowering his arm, striking the body of a woman with some sort of object. When a police car arrived, defendant emptied his hands. The woman was bleeding, her eyes were swollen shut and she was not talking coherently. Sgt. McCarrel went to the hospital with Kimmar. He saw no weapon in her possession.

Officer Byron Doyal received a call for help at approximately 6:30 p.m. on January 31, 1985. Responding, he observed defendant standing and bending over Kimmar in the parking lot. She had no shoes on, her face and body were bloody, her eyes and her whole face were swollen and her clothes were ripped. The temperature was approximately zero degrees or four below. Her clothing was covered with blood, which seemed to be coming from her face. Officer Doyal arrested defendant. Defendant was not bleeding nor did he have any bruises or marks on his face when arrested. Kimmar could only mumble and moan and she faded in and out of consciousness. Kimmar was taken to Chicago Osteopathic Hospital and remained unconscious that evening.

Defendant testified that Kimmar was his fiancee and that on January 31, 1985, he came by to drop off rent money and he drank with her, her brother and her brother's friend. After the brother and his friend left, he and Kimmar argued and when defendant began walking away she hit him on the head with an ashtray. Kimmar ran to the kitchen to get a knife, defendant caught her and she slapped him. Defendant then hit her, making her lip bleed. Defendant also hit her in the eye and both her eyes were bruised and swollen. Defendant testified they were both drunk. They put water on Kimmar's lip, she agreed to go out with him and they left together five minutes later. She started arguing again and tried to scratch defendant, so he pushed her and she slipped and fell in the parking lot. Defendant tried to lift her up, but she fell down. Defendant attempted to use the snow to wash her face to wake her up. He thought Kimmar was high. Defendant started kicking snow, still trying to arouse her, when the police arrived. Defendant told the police he did not beat Kimmar.

Detective Hood testified by stipulation that he interviewed defendant on January 31, 1985, between 6:30 p.m. and 10 p.m., and after receiving Miranda warnings, defendant asserted Kimmar told him she had been beaten by her ex-boyfriend and stopped defendant from looking for the ex-boyfriend. Defendant denied making such a statement to Detective Hood. Defendant stated he had previously received probation for burglary in Illinois and served two prison sentences in California, one for theft.

Dr. Glenon R. Einspanier, Jr., a general surgical resident at Chi-

cago Osteopathic Hospital, treated Kimmar on January 31. When she arrived at the hospital, badly beaten, she was agitated though conscious. She responded with brief answers to his questions. The agitation was consistent with having been beaten severely and also consistent with having been drinking. Kimmar had suffered multiple lacerations and contusions of the head, was hypothermic and her eyes were swollen shut. Approximately two-thirds of her head was swollen. A catheter was inserted in her abdomen and warm fluid pumped into her abdominal cavity to raise her temperature. X rays were taken as well as a "CT scan," but no fractures were discovered. Her blood-alcohol level was 108 milligrams per decaliter, indicating she had been drinking. She was never comatose while under his care; but he left the hospital the next day when his service changed. Kimmar was transferred to the intensive care unit. Stipulation testimony by Dr. Albert Milford indicated he was Kimmar's treating physician, Dr. Einspanier worked under his direction, and Kimmar was at times alert and at other times asleep in the period February 1 through 7, 1985.

Kimmar's mother, Joyce Slack, a registered nurse, saw her daughter on February 1, 1985, at the intensive care unit; Slack herself had been in another hospital until then with pneumonia. Her daughter's face was black and blue and swollen all over on February 1, 1985. Kimmar had bruises all over her face, her hands and feet were swollen and frostbitten and she had approximately three bruise marks on her chest. Her stomach area was taped where blood had been drained from her abdomen. Kimmar also had IVs in both arms. After her daughter returned home, she was still in a serious condition and confined to her bed. The right side of her upper lip never healed, while the bruises on Kimmar's face and chest and the swelling around her eyes lasted about three weeks. Her daughter remained unconscious for three days in the hospital.

Kimmar stated she had to stay in the hospital for seven days and was unconscious for three days. Her face was badly bruised, her hands and feet were frostbitten and her rib and stomach were hurt. Her face was swollen and her right eye had blurred vision as a result of being injured. Kimmar had to rest in bed for two months after returning from the hospital while receiving medication. She also received three weeks of whirlpool treatment for her hands.

On March 8, 1985, defendant was charged by information with two counts of aggravated battery. (Ill. Rev. Stat. 1983, ch. 38, pars. 12—4(a), (b)(8).) Officer Doyal, Sgt. McCarrel and Butler all made in-court identifications of defendant at trial. On October 3, 1985, the circuit court found defendant guilty on both counts. On November 7, 1985,

after a hearing at which defendant testified that Kimmar had tried to drop the charges and the State enumerated defendant's past convictions for burglary, batteries, forgery, assault with a deadly weapon and robbery, the circuit court sentenced defendant as previously stated. Defendant had requested two to five years' imprisonment. The court commented that defendant would probably get into additional trouble when released. Defendant appeals.

I

Defendant first challenges his conviction on the second count of aggravated battery, arguing the evidence indicated the beating took place in a private parking lot rather than on a public way and therefore the evidence presented left the charge unproved. The State responds that the parking lot was used by the public and had public access and thus qualifies as a public way. The State also maintains that the charging instrument adequately apprised defendant of the charges against him.

The counts of aggravated battery were based on the following statutory provisions (Ill. Rev. Stat. 1983, ch. 38, pars. 12—4(a), (b)(8)):

"(a) A person who, in committing a battery, intentionally or knowingly causes great bodily harm *** commits aggravated battery.

(b) A person who, in committing a battery, commits aggravated battery if he either:

* * *

(8) Is, or the person battered is, on or about a public way, public property or public place of accommodation or amusement *** ."

The information charge relating to section 12—4(b)(8) stated:

"[t]hat HE, INTENTIONALLY WITHOUT LEGAL JUSTIFICATION CAUSED BODILY HARM TO KIMBERLY CROSBY BY KICKING AND BEATING HER ABOUT THE HEAD WITH HIS FEET AND FISTS [WHILE] THEY WERE ON A PUBLIC WAY, TO WIT: EAST 53RD STREET, CHICAGO, ILLINOIS IN VIOLATION OF CHAPTER 38, SECTION 12—4(B)(8) OF THE ILLINOIS REVISED STATUTES 1983 ***."

Defendant asserts that "public way" has the very limited meaning of a highway and since the offense was not committed on a highway, the information count denied defendant his due process rights, as the facts proved did not constitute the charged offense.

■■ The purpose of a charging instrument is to permit the accused to fully prepare his defense and to serve as a bar to a subsequent pros-

ecution for the same offense. (*People v. Moreno* (1983), 116 Ill. App. 3d 1, 5, 452 N.E.2d 22; *People v. Phelan* (1981), 99 Ill. App. 3d 925, 929, 426 N.E.2d 925.) Defendant must be apprised with reasonable certainty of the precise crime he is accused of. (See *People v. Lutz* (1978), 73 Ill. 2d 204, 211, 383 N.E.2d 171.) When a statute is cited in the charging instrument, the statute and charge are construed together. (*People v. Moreno* (1983), 116 Ill. App. 3d 1, 5, 452 N.E.2d 22.) In the case *sub judice*, the public way count allowed defendant to fully prepare his defense and apprised him of the specific crime involved. The information count included the victim's name, and cited the appropriate statutory provision. While the exact street address was not given, a formal defect does not void a charging instrument. (*People v. Moreno* (1983), 116 Ill. App. 3d 1, 5, 452 N.E.2d 22.) The complaint and the State's answer to discovery in the present case provided a precise address of 1411 E. 53rd Street. No prejudice to the conduct of the defense is evident. *People v. Nickson* (1978), 58 Ill. App. 3d 470, 478-79, 374 N.E.2d 804.

The crucial issue is whether the parking lot can be considered a public way. Defendant relies upon two recent cases holding that the implied consent statute for alcohol testing, applying to those driving on the public highways, does not include persons driving in parking lots of restaurants, hotels, and apartment buildings. *People v. Kissel* (1986), 150 Ill. App. 3d 283, 501 N.E.2d 963; *People v. Montelongo* (1987), 152 Ill. App. 3d 518, 504 N.E.2d 936; see *People v. Kozak* (1970), 130 Ill. App. 2d 334, 264 N.E.2d 896.

■ The aggravated battery provision (Ill. Rev. Stat. 1983, ch. 38, par. 12—4(b)(8)) has been interpreted otherwise. Illinois courts have held that the aggravated battery statute applies when an offense occurs in an area accessible to the public. (*People v. Ward* (1981), 95 Ill. App. 3d 283, 287-88, 419 N.E.2d 1240; *People v. Kamp* (1985), 131 Ill. App. 3d 989, 993, 476 N.E.2d 768.) In *People v. Ward* the court held that a battery in the parking lot of a hotel was amenable to the statute since the questioned area was open to the public. In *Ward*, the appellate court observed (*People v. Ward* (1981), 95 Ill. App. 3d 283, 287-88, 419 N.E.2d 1240):

> "Obviously, our legislature was of the belief that a battery committed in an area open to the public, whether it be a public way, public property or public place of accommodation or amusement, constitutes a more serious threat to the community than a battery committed elsewhere. (See Ill. Ann. Stat., ch. 38, par. 12—4(b)(8), Committee Comments, at 465 (Smith-Hurd 1979).) As we interpret this statutory language, *the essential allegation for a*

*charge under section 12—4(b)(8) is that the battery occurred in a public area.* Whether the property was actually publicly owned and, therefore, 'public property' rather than a privately owned 'public place of accommodation' is irrelevant; *what is significant is that the alleged offense occurred in an area accessible to the public.*" (Emphasis added.)

In *People v. Kamp* (1985), 131 Ill. App. 3d 989, 993, 476 N.E.2d 768, the court held that a park open to the public, irrespective of its ownership, met the requirement of occurring on or about a public way or property. The legislature selected wording providing a general description of areas the public frequented, being concerned with possible harm to the public. (*People v. Handley* (1983), 117 Ill. App. 3d 949, 952-53, 454 N.E.2d 350; *People v. Murphy* (1986), 145 Ill. App. 3d 813, 815, 496 N.E.2d 12.) The evidence here showed that the parking lot in question was used by residents of Kimmar's building and their guests, by people patronizing the restaurant and others. The parking lot was therefore a place frequented by the public. *People v. Handley* (1983), 117 Ill. App. 3d 949, 952, 454 N.E.2d 350.

Accordingly, in keeping with the rule that essential allegations of indictments must be proven (*Jackson v. Virginia* (1979), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781; *People v. Mosby* (1962), 25 Ill. 2d 400, 403, 185 N.E.2d 152), the parking lot in question was a public way for purposes of the aggravated battery statute and the offenses were proven.

## II

■ Defendant next finds reversible error in the circuit court's permitting the State to prove great bodily harm through leading questions asked on direct examination of Kimmar concerning specific injuries.

The circuit court explained that it overruled the objections because the witness had a bad memory concerning her injuries and that since most people had only two eyes, asking which eye was injured was not leading. The record discloses that the State previously had asked Kimmar what injuries she sustained from the fight. She responded that her face was badly bruised, her hands and feet frostbitten, and her rib and stomach hurt, before being asked the leading questions. Other witnesses provided extensive testimony concerning Kimmar's injuries, as detailed earlier in this opinion and which need not be repeated here.

Considering the court's explanation of its ruling, and the overwhelming supporting evidence, there was neither an abuse of discretion nor prejudice to defendant in the questions asked.

## III

■ Defendant also argues that he was not proved guilty beyond a reasonable doubt. In light of the record evidence developed at trial, this argument verges upon frivolousness.

Kimmar's testimony was corroborated by Butler, Mayes and Sgt. McCarrel, as previously set forth. Defendant does not suggest any of these three witnesses were drunk or unreliable. Butler saw defendant kick a woman hard three or four times, from only six to eight feet away. He stated the kicking he observed was not the type to merely arouse someone. Mayes saw a man in the parking lot whose arm was going up and down as if striking someone or something. McCarrel saw defendant striking Kimmar with some object in his hands. These accounts do not support defendant's attempt at innocent explanation of trying to revive Kimmar with snow. Also, Kimmar provided a coherent and believable account of the beating. Her testimony was consistent and corroborated. *People v. Thompson* (1978), 57 Ill. App. 3d 134, 140, 372 N.E.2d 1052.

Determining the credibility of witnesses and the weight to be given their testimony is the function of the trial court as the trier of fact. (*People v. Locascio* (1985), 106 Ill. 2d 529, 537, 478 N.E.2d 1358; *People v. Akis* (1976), 63 Ill. 2d 296, 298-99, 347 N.E.2d 733.) Assessments of witness credibility are especially signifiant when conflicting evidence is presented. (*People v. Houston* (1986), 151 Ill. App. 3d 102, 110, 502 N.E.2d 1111.) Here, only defendant's testimony "taxes the gullibility of the credulous." (*People v. Coulson* (1958), 13 Ill. 2d 290, 296, 149 N.E.2d 96.) Defendant's reliance upon on *People v. Lonzo* (1974), 20 Ill. App. 3d 721, 725-26, 315 N.E.2d 256, is misplaced; at bar, Kimmar's account is corroborated by three witnesses whose testimony was neither inconsistent nor perfunctory.

■ From the foregoing it is clear that the circuit court was justified in finding Kimmar's testimony and that of the other State witnesses credible and supported the finding of guilt beyond a reasonable doubt.

## IV

■ ■ Improper multiple convictions are alleged by defendant to have been entered, based upon the same acts, and he asks that the cause be remanded since the superfluous convictions may have contributed to the sentence.

The mittimus here shows that the sentence was based on the conviction under section 12—4(a) only. (Ill. Rev. Stat. 1983, ch. 38, par. 12—4(a).) The court made no explicit reference at sentencing to which

charge it was using to sentence defendant; the half sheet reflects that the judgment was entered only on count 1 and no judgment was entered on count 2.

No more than one offense may be carved from the same physical act or acts. (*People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273; *People v. Donaldson* (1982), 91 Ill. 2d 164, 170, 435 N.E.2d 477.) Factors to be considered in deciding whether defendant's conduct consisted of one physical act or several include: the existence of an intervening event, the time elapsing between parts of defendant's conduct, the identity of the victim, the similarity of the acts, whether the conduct took place at the same location, and prosecutorial intent. *People v. Baity* (1984), 125 Ill. App. 3d 50, 52-54, 465 N.E.2d 622; *People v. Horne* (1984), 129 Ill. App. 3d 1066, 1074, 473 N.E.2d 465.

█ In the present case, the foregoing factors favor finding a single physical act: there was no intervening event, little time elapsed, the acts of beating and kicking were similar, Kimmar was the only victim, the conduct took place in the parking lot and both counts referred to the same acts, "kicking and beating her about the head with his feet and fists." Under analogous circumstances, one physical act was found when a defendant struck a victim three times with his fists, then kicked him twice. (*People v. Hawk* (1980), 80 Ill. App. 3d 827, 828, 400 N.E.2d 499.) One act was also found when a defendant struck a victim first on the back of her head and neck, then, after she turned around, hit her in the face and broke her nose. (*People v. Ellis* (1986), 143 Ill. App. 3d 892, 893-97, 493 N.E.2d 739.) In each instance, one of the two aggravated battery convictions was vacated and the remainder of the judgment affirmed.

█ Remandment is unnecessary where there is no indication that the circuit court improperly considered the vacated conviction. (*People v. Payne* (1983), 98 Ill. 2d 45, 55, 57, 456 N.E.2d 44, *cert. denied* (1984), 465 U.S. 1036, 79 L. Ed. 2d 708, 104 S. Ct. 1310; *People v. Wilson* (1981), 93 Ill. App. 3d 395, 397, 417 N.E.2d 146.) There is no indication here that the conviction on count 2 influenced the sentence. To the contrary, the sentence was within the range defendant himself requested.

For the foregoing reasons the judgment of the circuit court must be affirmed.

Affirmed.

SCARIANO, P.J., and STAMOS, J., concur.