THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JESSE PICO et al., Defendants-Appellants.

Third District   Nos. 3—86—0653, 3—86—0671 cons.

Opinion filed October 1, 1987.

Wigell & Fletcher, of Chicago (Thomas A. Lilien, of State Appellate Defender's Office, and Kenneth L. Fletcher, of counsel), for appellants.

Edward Petka, State's Attorney, of Joliet (Walter P. Hehner, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HEIPLE delivered the opinion of the court:

We have consolidated for opinion the appeals of Jesse Pico and Rudy Mauricio, as they were convicted together following a joint jury trial and seek reversal on similar grounds. These codefendants, who were tried with Paul Mauricio, assert that they were denied their constitutional right to effective assistance of counsel because one attorney's representation of all three codefendants presented a conflict of interest and because the admission of Paul Mauricio's statement denied them their sixth amendment right to confrontation. We agree and therefore reverse and remand for a new trial.

This case arises out of a shooting incident which occurred in Joliet, Illinois. Although many of the facts are in dispute, it was agreed that the codefendants, Jesse Pico, Rudy Mauricio, and Paul Mauricio (Paul), were at the Mauricio residence sometime after 1 a.m. on May 26, 1985, when the victim, Paul Lair (Lair), rode past on a small motorcycle. At trial, Lair testified that he had previously been friends with the Mauricio brothers and had participated in gang activities with them, although he was not a member of the gang to which they belonged. Lair further testified that for a few months prior to this incident he had been avoiding the Mauricios because he was frightened by the gang activities. He indicated that the Mauricios had "hassled" him because of his decision to avoid the gang activities.

Lair stated that as he drove by the Mauricio residence on May 26, he saw Rudy backing a car with two passengers out of the driveway. Lair testified that he had no weapons in his possession and that as he drove past, he said nothing and made no hand gestures to anyone at the residence. He then heard the car's horn honking and he noticed that the car followed him as he went around the block, so he intended to drive to the police station to file a complaint. As he drove rapidly

toward the police station, with the car Rudy was driving still behind him, Lair reportedly heard a little shot and felt a stinging in his back.

After he reported the incident to the police, an officer drove Lair to the hospital. While en route, they saw the car Rudy had been driving, so the officer pulled the car over. Rudy was in the driver's seat, Jesse was in the front passenger seat, and Paul was in the backseat. From the floor of the backseat of the vehicle, a police officer removed an empty shotgun shell and a shotgun containing a live shell.

Lair was then taken to the hospital. Three birdshot pellets were removed from his back and he was released later that morning.

The defendants did not testify at trial, but after they were arrested, they made statements to several police officers who then testified at trial. Officer James Powers testified about his interview with Paul Mauricio. According to Paul, when Lair drove by the Mauricio residence on his motorcycle, he fired a gun in the direction of the house and then rode around the block. Paul told Officer Powers that he ran into his house to obtain a shotgun and when he exited the house, he saw Lair driving down the street away from the Mauricio residence. Paul stated that he then went into the street and fired the shotgun at Lair. Officer Powers testified that Paul then told him that he, Rudy, and Jesse got into the car and went looking for Lair.

Officer Judith Mericle testified about information she obtained during an interview with Jesse Pico. Jesse told the officer that as Lair drove by the Mauricio residence on his motorcycle, he slowed down and yelled something unintelligible before pulling away. Jesse said that Paul then picked up the shotgun which was in the front yard with him and fired a shot at Lair as he rode away. Then, according to Jesse, the three got into the car to buy beer. Jesse reportedly told Officer Mericle that he did not see Lair brandish or shoot a gun, but that Paul took the shotgun in the car with them for security purposes, in the event that Lair returned to shoot at them.

Officer James Klancher spoke with Rudy while he completed the necessary booking procedures. The officer testified that Rudy stated that he and the others had just gone out to buy beer and that someone shot at them. When the officer asked Rudy who they shot at, Rudy reportedly said, "We were shooting at pigeons."

After the State presented its case, defense counsel rested without presenting evidence and the case went to the jury. Each of the code-fendants was found guilty of one count of armed violence predicated upon aggravated battery on a public way and one count of aggravated battery predicated upon great bodily harm; the trial court later vacated the aggravated battery convictions. Jesse Pico was sentenced to

a 10-year term of imprisonment, and Rudy Mauricio was sentenced to an 8-year term of imprisonment.

On appeal, Jesse asserts that: (1) trial counsel was ineffective for failing to move to sever his trial from that of his codefendants; (2) trial counsel was ineffective for failing to move to bar the admission of Paul Mauricio's statements and that, as a result, he was denied his sixth amendment right of confrontation; (3) trial counsel's representation of the three codefendants was a conflict of interest; (4) the State failed to prove an essential element of the crime, that the street where the incident occurred was a public way; (5) the armed violence predicated upon aggravated battery on a public way should be dismissed as the predicate felony of aggravated battery on a public way was never charged; and (6) trial counsel was ineffective for failing to file a motion to suppress the statements of Jesse and Paul Mauricio. Rudy asserts that: (1) trial counsel labored under a conflict of interest by representing Rudy and his brother, Paul; (2) because trial counsel did not file a motion to sever Rudy's case from Paul's, Rudy did not receive effective assistance of counsel; and (3) the State failed to prove that the street where the incident occurred was a public way.

■ The defendants' primary assertions on appeal are that Paul's statement was erroneously used to inculpate them, that they were prejudiced by this error, and that trial counsel was ineffective for failing to prevent the situation by moving to sever their trials from Paul's. To prevail on a claim of ineffective assistance of counsel, a defendant must prove that counsel was incompetent and that but for counsel's unprofessional errors, the outcome would have been different. *People v. Albanese* (1984), 104 Ill. 2d 504.

■ Generally, defendants jointly indicted are to be tried jointly unless separate trials are required to avoid prejudice. (*People v. Lee* (1981), 87 Ill. 2d 182, 187.) Illinois courts recognize two separate grounds for severance. First, a defendant may be prejudiced when he is implicated by the hearsay admissions of a codefendant who does not testify, thereby depriving the defendant of his sixth amendment right of confrontation. (See *Bruton v. United States* (1968), 391 U.S. 123, 20 L.Ed.2d 476, 88 S. Ct. 1620.) In *Bruton*, the court also determined that the prejudice which results from the admission of the codefendant's out-of-court statement is not cured by instructing the jury that the statement should be disregarded in determining the guilt or innocence of the defendant because a limiting instruction cannot replace the right to cross-examine. (391 U.S. 123, 137, 20 L. Ed. 2d 476, 485, 88 S. Ct. 1620, 1628.) An exception to the *Bruton* rule exists where the defendant has also confessed and his confession inter-

locks with the one given by the defendant. *Parker v. Randolph* (1979), 442 U.S. 62, 60 L. Ed. 2d 713, 99 S. Ct. 2132.

■ The second ground for severance arises when the defendants' defenses are so antagonistic that one codefendant cannot receive a fair trial if jointly tried. (*People v. Olinger* (1986), 112 Ill. 2d 324, cert. denied (1987), 479 U.S. ___, 94 L. Ed. 2d 180, 107 S. Ct. 1329, *rehearing denied* (1987), 481 U.S. ___, 95 L. Ed. 2d 520, 107 S. Ct. 1914.) In the instant case, Rudy and Jesse allege both forms of prejudice.

Jesse and Rudy denied any involvement in Lair's shooting and claimed they entered the car only to go to a liquor store to buy more beer. According to Officer Powers' testimony, Paul admitted that he shot at Lair, and stated that afterward, he, Rudy, and Jesse got into the car and went looking for Lair. During closing argument, the assistant State's Attorney recognized the inconsistencies between the codefendants' statements and told the jury that Paul's statement provided the clue "as to why they were in that vehicle with a shotgun ***, because *they* were going to look for Paul Lair." (Emphasis added.) The assistant State's Attorney then added, "I think that indicates to you a great deal about the intentions of these individuals on those early morning hours."

■ The statements made by Rudy and Jesse contain no admissions that they aided or abetted Paul. Their statements differ crucially from his in that they denied any awareness of a plan to look for and shoot Lair, and therefore cannot be considered to interlock with Paul's. The primary evidence of their complicity came from Paul's admission, which the State improperly seized upon and used to bolster its case against Rudy and Jesse. Because Paul did not take the stand, Rudy and Jesse did not have the opportunity to cross-examine him in order to refute his statement that they all went after Lair. Therefore, under the rule established in *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, the codefendants were deprived of their sixth amendment right of confrontation. Had Jesse and Rudy received a trial separate from Paul, Paul's inculpatory hearsay statement would not have been admitted against them and the State could not have improperly argued that based on Paul's statement, the jury could conclude that Rudy and Jesse were accomplices. Instead, Rudy and Jesse could have made strong arguments that Paul was solely responsible for the shooting and that they were not accountable for his actions.

■ Trial counsel should have filed a motion to sever, but because the codefendants were jointly tried, Rudy and Jesse were incrimi-

nated by Paul's statement, which they could not cross-examine. Therefore, we conclude that fundamental fairness requires that Rudy and Jesse receive a new trial. Because the statements Rudy and Jesse made are similar and do not incriminate one another, the codefendants need not receive separate new trials, but may be jointly tried absent a showing of prejudice.

■■ ■ We note additionally that our disposition in this case is mandated on grounds of conflict of interest. When a defendant establishes that an actual conflict of interest manifested at trial, prejudice will be presumed to have resulted and the defendant will prevail upon a claim of ineffective assistance of counsel. (*People v. Hunt* (1979), 73 Ill. App. 3d 1034, *cert. denied* (1980), 446 U.S. 966, 64 L. Ed. 2d 826, 100 S. Ct. 2944.) *In re V.W.* (1983), 112 Ill. App. 3d 587, presents similar facts and is instructive on this issue. V.W. and two other juveniles were represented by the same public defender at a delinquency hearing. V.W. testified that all three were present during the incident in question, while the co-respondents gave alibi defenses. The court held that the circumstances presented defense counsel with a conflict of interest and reversed the adjudication of delinquency. The court noted that counsel was faced with a situation in which it appeared that at least one of his three clients was lying, although he could not thoroughly examine his own clients to bring out the truth. In the instant case, Paul's statement conflicted with Rudy's and Jesse's, giving the appearance that at least one of them was lying. To the extent that the credibility of each codefendant was called into question, and could not be restored without proving at least one of the others was lying, an actual conflict of interest existed. (See also *People v. Willey* (1980), 85 Ill. App. 3d 749.) For these additional reasons, Rudy and Jesse should not have been represented by the same attorney who represented Paul.

■■ Next, Rudy and Jesse allege that the State failed to prove that the street where the shooting occurred was a public way. This argument is meritless. At trial, a police officer testified that on the date the incident took place, the street was a dedicated public street open for traffic. Additionally, the victim testified that he rode his motorcycle on that street, and the codefendants and the police drove their vehicles on the street. The evidence established that the street was open to the public and thus satisfies the statutory requirement that the underlying aggravated battery occurred on a public way. *People v. Kamp* (1985), 131 Ill. App. 3d 989.

■■ Finally, Jesse Pico contends that his conviction for armed violence predicated on aggravated battery on a public way must be re-

versed because the underlying felony, aggravated battery on a public way, was never charged. This contention is without foundation. Count I of the criminal complaint and count I of the indictment charge the codefendants with armed violence and allege they, while armed with a shotgun, committed the felony of aggravated battery in violation of section 12—4(b)(8) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 12—4(b)(8)) by shooting Paul Lair while Lair was on a public way.

In conclusion, aggravated battery on a public way was correctly charged, and the State proved that the street in question was a public way. However, because Paul Mauricio's statement inculpated Jesse Pico and Rudy Mauricio and its admission denied them their sixth amendment right of confrontation, and because defense counsel labored under a conflict of interest, the convictions of Rudy and Jesse are reversed, and the cause is remanded for a new trial.

Reversed and remanded.

BARRY, P.J., and STOUDER, J., concur.