THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
PHILIP PENNINGTON, Defendant-Appellant.

Second District   No. 2—86—1044

Opinion filed July 22, 1988.

G. Joseph Weller and Manuel S. Serritos, both of State Appellate Defender's Office, of Elgin, for appellant.

Philip L. DeMarzio, State's Attorney, of Sycamore (William L. Browers and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE NASH delivered the opinion of the court:
Following a bench trial, defendant, Philip Pennington, was convicted of aggravated battery and sentenced to 60 days' imprison-

ment, probation for a period of two years, and to undertake psychiatric counseling. The sole issues on appeal are whether the grounds of a privately owned dormitory are "on or about a public way" as defined in section 12—4(b)(8) of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(b)(8)) and whether his sentence is excessive.

Cary Booth testified at trial that at approximately 4 p.m., on March 31, 1986, defendant attacked her. Booth, a college student, was walking on a sidewalk near the door of her dormitory when defendant, a stranger, began grabbing her buttocks and pulling her sweater, placing his hand on her left breast. Defendant attempted to push her to the ground, but Booth resisted by hitting him with her book bag and pushing him away. Defendant stated to Booth, "C'mon. You're gorgeous. I want you." Booth got away from the defendant and ran into the building. Booth testified that she observed defendant on a second occasion on April 7, 1986, near her classroom when he approached her holding a camera. Booth ran to telephone the police, and she heard the camera click.

Booth stated on cross-examination that the sidewalk of the dormitory where the attack occurred was privately owned and was also used by nonresidents. The dormitory had washrooms, a cafeteria, and a store which nonresidents also patronized, and the nonresidents could buy a ticket to present to the cafeteria for meals.

Susan Grant, a friend and also a student at the college, testified that on March 31, 1986, at about 4 p.m., she was inside the University Plaza dormitory walking through a corridor. Grant noticed the complainant approaching the building and a man walking behind her. The man, whom she identified in court as defendant, blocked about half of Booth's body and, although a glass revolving door partially obstructed her view, Grant observed defendant turn to Booth and Booth move to block or strike him with her backpack. Grant observed defendant raising his arm and noticed his profile and saw Booth walk quickly toward the building. The witness further testified that the University Plaza was situated between the university apartments and the campus and that university apartment residents would cut through the university plaza building in order to get to the campus.

Officer Dick Zenzen testified that Booth described defendant to him when she filed her complaint on March 31, 1986. Officer Zenzen filed a second report on April 7, 1986, when defendant took Booth's picture with a 35-millimeter camera outside a classroom, and the officer apprehended defendant later that day in the commons area. Zen-

zen transported defendant to the police station, advised him of his *Miranda* rights, and found a camera on his person. Defendant admitted grabbing Booth and indicated that he had done similar acts previously.

Officer Zenzen also testified that he ate meals at the University Plaza as a nonresident for approximately two years, attended club meetings in the building, attended a wedding reception, used the restrooms, and shopped in the store. Although he had friends living in the building, he was unaware of any rule that limited access to those visiting someone in the building. Zenzen also stated that parts of the building were locked and access was provided only to residents and their guests.

For the defense, Stuart Stern, the manager of the University Plaza dormitory, testified that the building was privately owned and access to it was limited to residents and guests, but it was not enforced. If people cut through the walkway or played on the lawn, he did not tell them to vacate the premises.

The trial court found that since the attack occurred in an area accessible to the public, the "public way" requirement of section 12—4(b)(8) was met.

At the sentencing hearing, evidence was presented in aggravation that Booth could not return to school for a month due to the trauma related to the incident. Vita Pennington, defendant's mother, testified in mitigation that defendant was a serious classical music student who worked in a retail shop and intended to return to school after the trial. Jerard Conroy, a family friend for many years, testified that defendant did not have a tendency for violence and was respectful. Defendant's post-trial motion was denied and the sentence stayed pending appeal.

Defendant contends that the State failed to prove him guilty beyond a reasonable doubt of aggravated battery where the attack occurred on privately owned property designated for private use. Section 12—4(b)(8) of the Code provides:

"(b) A person who, in committing a battery, commits aggravated battery if he either:

\* \* \*

(8) Is, or the person battered is, on or about a public way, public property or public place of accommodation or amusement \* \* \*." (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(b)(8).)

The complaint charged defendant with the commission of battery while on the sidewalk entrance to the University Plaza, on or about a public way.

■ Defendant correctly acknowledges that a public way need not be construed as a place owned by a public entity. (*People v. Kamp* (1985), 131 Ill. App. 3d 989, 993, 476 N.E.2d 768, 770-71.) In *People v. Ward* (1981), 95 Ill. App. 3d 283, 287-88, 419 N.E.2d 1240, 1244, this court considered section 12—4(b)(8) of the Code:

> "Obviously, our legislature was of the belief that a battery committed in an area open to the public, whether it be a public way, public property or public place of accommodation or amusement, constitutes a more serious threat to the community than a battery committed elsewhere. [Citation.] As we interpret the statutory language, the essential allegation for a charge under section 12—4(b)(8) is that the battery occurred in a public area. Whether the property was actually publicly owned and, therefore, 'public property' rather than a privately owned 'public place of accommodation' is irrelevant; what is significant is that the alleged offense occurred in an area accessible to the public." (*Ward*, 95 Ill. App. 3d at 287-88, 419 N.E.2d at 1244.)

We conclude that the trial court did not err in determining that the sidewalk adjacent to the University Plaza was accessible to the public and a public way under the statute. Testimony disclosed that the path where the battery occurred was commonly used by other students who traveled between an apartment complex and the campus, since it was in direct line with the campus. While the dormitory manager testified that the path was limited to residents and their guests, he acknowledged that he allowed nonresidents to use the path and play on the lawn. Also, the fact that nonresidents used the cafeteria and store on the premises of the dormitory supports the determination that the sidewalk leading to the building was a public way; certainly defendant considered the area to be a public way as he used it as such.

Defendant argues that the statutory interpretation in *Ward* is not controlling because the discussion was merely *dicta*. Nevertheless, we note that subsequent cases have followed *Ward*'s interpretation and construed "on or about a public way" as meaning "an area accessible to the public." *People v. Pugh* (1987), 162 Ill. App. 3d 1030, 1034, 516 N.E.2d 396, 399 (parking lot adjacent to an apartment complex for residents and guests was a public way); *People v. Williams* (1987), 161 Ill. App. 3d 613, 619-20, 515 N.E.2d 266, 270-71 (parking lot used by apartment dwellers and restaurant patrons was a public way); *People v. Lee* (1987), 158 Ill. App. 3d 1032, 1036, 512 N.E.2d 92, 94 (parking lot of a convenience store is a public

way); *People v. Kamp* (1985), 131 Ill. App. 3d 989, 993, 476 N.E.2d 768, 771, *appeal denied* (1985), 106 Ill. 2d 557 (a park is open to the public); see also *People v. Pico* (1987), 161 Ill. App. 3d 225, 231, 514 N.E.2d 224, 228 (a street is a public way).

■ Defendant also argues that the sidewalk adjacent to the dormitory was not a place where the public was "invited to come into and partake of whatever was being offered therein," citing *People v. Murphy* (1986), 145 Ill. App. 3d 813, 815, 496 N.E.2d 12, 14. In *Murphy*, the court held that a privately owned tavern was a "public place of accommodation or amusement"; its language referring to an invitation pertained only to the definition of a public place of accommodation or amusement and did not refer to a public way. The State was not required, in the present case, to show that defendant had been invited onto the walkway.

■ Defendant further argues that his sentence is excessive in view of his youth, lack of prior convictions, and his educational and work record. Defendant was convicted of a Class 3 felony, which is punishable by imprisonment for a term between two and five years. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(6).) The sentence of 60 days' imprisonment, two years' probation, and counseling is well within the parameters of the sentencing statute. While he did not cause permanent physical harm to Booth, his conduct apparently caused her to miss school for approximately a month due to the trauma of the incident. We conclude that the trial court did not abuse its discretion in imposing sentence. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

INGLIS and DUNN, JJ., concur.