THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RASHAAD J. DEXTER, Defendant-Appellant.

Second District   No. 2—00—1279

Opinion filed March 21, 2002.

584

G. Joseph Weller and Darren E. Miller, both of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (Martin P. Moltz and Peggy F.J. Bradford, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

After a bench trial, defendant, Rashaad J. Dexter, was found guilty of unlawfully possessing, with the intent to deliver, 1 gram or more but less than 15 grams of a substance containing cocaine, a Class 1 felony (720 ILCS 570/401(c)(2) (West 1998)). However, because the trial court found that defendant committed the offense while he was on a public way within 1,000 feet of a public park, defendant was convicted of a Class X felony under section 407(b)(1) of the Illinois Controlled Substances Act (section 407(b)(1)) (720 ILCS 570/407(b)(1) (West 1998)). The trial court sentenced defendant to six years and six months in prison.

Defendant appeals, arguing that the State failed to prove beyond a reasonable doubt that he committed the offense while he was on a "public way." We agree, reduce defendant's conviction to the lesser included Class 1 felony, and remand for resentencing.

We summarize those facts needed to frame the issue on appeal. The State's first witness, Rockford police officer Brian Shimaitis, testified as follows. At about 11:50 p.m. on November 14, 1999, Shimaitis and fellow officer Douglas Palmer were positioned directly west of and across the street from a privately owned apartment building at 1028 Kishwaukee. A police tactical team was nearby. The police suspected that the building was a drug house. A sidewalk about 20 feet long ran from the public sidewalk toward the building; two or three steps then

led to a concrete porch pad which in turn led to the main door, which was made of glass and was located between two apartments. Plants were also on either side of the door about two feet out from the building.

When Shimaitis first arrived, four men, including defendant, were in the "stairwell area" of the building. Within about 20 minutes, 8 people came up one at a time to the building. Each spoke to one of the four men, made a hand-to-hand exchange, and left. As the tactical team moved in, Shimaitis and Palmer started across the street toward the house.

Shimaitis testified on direct examination that, when the tactical team started to move, defendant was standing outside the doorway at 1028 Kishwaukee. On cross-examination, Shimaitis added that, just before he and Palmer got across the street, defendant was standing left of the front door, leaning against a window. Shimaitis then testified that defendant was standing "up on the concrete pad [and] leaning against the building."

After Shimaitis and Palmer crossed the street, Shimaitis saw that defendant was on the ground, fighting with two other officers. Shimaitis, Palmer, and three other officers entered the building and escorted people from the stairway foyer to the outside. When Shimaitis exited the building, defendant was handcuffed outside.

Officer Randy Berke testified as follows. At about 11:50 p.m. on November 14, 1999, he was with the tactical unit on the northeast corner of the apartment building. Berke could not see the front of the building. Palmer and Shimaitis radioed that the target of the surveillance was standing in the doorway. After about 20 minutes, the tactical officers approached the building. Two officers entered. Four or five seconds later, Berke and two other officers approached the front entrance. Defendant was standing "right by the doorway." Berke said "Rockford police." Defendant ran south, dropping a paper bag. Berke soon helped to tackle defendant and retrieved the bag, which defendant had dropped "more towards the building side" of the bushes than to the "street side." Later, Berke ascertained that a sign marking a public park was 420 feet from where defendant was arrested.

Officer Palmer testified that, from his surveillance post, he saw about eight people approach the apartment building, "go into the stairwell foyer area," and make hand-to-hand transactions with defendant while defendant stood "in front of a little side window next to the door." After Palmer and Shimaitis crossed the street, Palmer saw defendant on the ground being subdued.

The State introduced expert testimony that the bag defendant dropped contained 6.8 grams of a substance containing cocaine and

that the amount of cocaine, the packaging, and the presence of $100 cash on defendant showed that he intended to deliver the drugs.

Defendant introduced testimony Julius Ross gave at an earlier hearing. Ross testified that, when he arrived at 1028 Kishwaukee, nobody was outside the building. Ross entered a hallway or porch-like area but did not enter an apartment. Defendant was in the hallway. As Ross started up the stairs to the second floor, the police entered and arrested defendant and others in the hallway.

Defendant testified that, at about 11:20 p.m. on November 14, 1999, he and two friends walked to 1028 Kishwaukee to buy marijuana. Defendant went in through the front door, saw some people inside, and stepped back onto the front porch. At that point, police raided the house. While at 1028 Kishwaukee, defendant never possessed the paper bag that had cocaine.

Defendant contends that the foregoing evidence does not prove beyond a reasonable doubt that he was guilty of possessing a controlled substance with the intent to deliver while he was on any "public way" as section 407(b)(1) uses that term. According to defendant, the State proved only that, when he possessed the cocaine, he was either inside a private apartment building or on the building's stoop and that neither location was a "public way." The State responds that the stairwell, foyer, and sidewalk of the privately owned apartment building were "public ways" because they were accessible to the public.

In evaluating a reasonable doubt claim, we must affirm the conviction as long as all the evidence, when viewed most favorably to the prosecution, is sufficient to convince any rational fact finder that the elements of the offense have been proved beyond a reasonable doubt. *People v. Perez*, 189 Ill. 2d 254, 265-66 (2000). However, to decide whether the evidence in this case proved that defendant committed his offense while he was on a "public way," we must first define that term as it is used in section 407(b)(1).

The meaning of a statute is a question of law that we review *de novo*. *Yang v. City of Chicago*, 195 Ill. 2d 96, 103 (2001). We aim to ascertain and effectuate the legislature's intent. *In re Marriage of Kates*, 198 Ill. 2d 156, 163 (2001). The best evidence of this intent is the statute's language itself. *Paris v. Feder*, 179 Ill. 2d 173, 177 (1997). Statutory terms that are not specifically defined should receive their ordinary and popularly understood meanings. *People v. Hicks*, 101 Ill. 2d 366, 371 (1984). The dictionary is one guide to these meanings. *People v. Barash*, 325 Ill. App. 3d 741, 745 (2001).

As section 407(b)(1) does not define "public way," we must give that term its plain meaning if that is possible. Fortunately, "public way" does indeed have a well established popularly understood mean-

ing. According to the dictionary, a "way" is "a thoroughfare used or designed for traveling or transportation from place to place: path, road, street" (Webster's Third New International Dictionary 2587 (1993)). Therefore, as logically follows, a "public way" is defined as "any passageway (as an alley, road, highway, boulevard, turnpike) or part thereof (as a bridge) open as of right to the public and designed for travel" (Webster's Third New International Dictionary 1836 (1993)). By contrast, a "private way" is privately owned, controlled, and maintained. Webster's Third New International Dictionary 1805 (1993).

The distinction between a public way and a private way is equally well established in legal lexicography. Although a *private* way is necessarily located on private property (Black's Law Dictionary 1587 (7th ed. 1999)), a highway is not public unless it is "controlled and maintained by governmental authorities for general use." Black's Law Dictionary 734 (7th ed. 1999).[1] A "private way" does not become a public way merely because it is accessible to the public.

The distinction of which we write was firmly established in the time of Blackstone, who carefully distinguished the latter from "the king's highways" and "common ways" (see 1 W. Blackstone, Commentaries 129-30 (Ehrlich ed. 1959)). The limited definitions of "public way" and "public highway" persist into the present era in judicial rulings from a variety of jurisdictions. See, *e.g.*, *Brown v. Wal-Mart Stores, Inc.*, 11 F.3d 1559, 1566 (10th Cir. 1993) (under Oklahoma law, private parking lot was not "public way" absent clear evidence that owner intended to dedicate lot to public use); *McKinney v. Ballard*, 352 S.W.2d 200, 202-03 (Ky. App. 1961) (private driveway not "public way"); *Lucianelli v. City of Newton*, 288 Mass. 535, 193 N.E. 354 (1934) (grass plot next to roadway was not "public way" merely because public used it permissively); *W.D. Cowls, Inc. v. Woicekoski*, 7 Mass. App. Ct. 18, 385 N.E.2d 521 (1979) ("private way" did not become "public way" merely because owner allowed public to use it);

---

[1]The use of "highway" instead of "way" makes no difference. Courts frequently treat the terms as interchangeable. See *Mammina v. Alexander Auto Service Co.*, 333 Ill. 158, 167 (1928); *Schmisseur v. Penn*, 47 Ill. App. 278, 284 (1893); *Okemo Mountain, Inc. v. Town of Ludlow Zoning Board of Adjustment*, 164 Vt. 447, 454, 671 A.2d 1263, 1269 (1995). At most, the difference between a "way" and a "highway" is simply that, as "high" means principal or important (see Webster's Third New International Dictionary 1067 (1993)), a "highway" is just a "high road," *i.e.*, "any main route on land, on water, or in the air." Black's Law Dictionary 734 (7th ed. 1999). Whether one takes the high road or the low road, he treads a "public way" as long as he is on a governmentally controlled or maintained passageway.

*Osburn v. Supreme Express & Transfer Co.*, 590 S.W.2d 360, 363 (Mo. App. 1979) (at common law, quitclaim deed did not create "public way").

At least until recently, Illinois courts consistently recognized that a "public way" or "public highway" is a route of passage maintained or controlled by public authorities for the use of the general public as a matter of right. The test of whether property is a "public way" has not been merely whether it is accessible to the public. Thus, in 1858, the supreme court approved a jury instruction that stated that a road was not a "common" or "public highway" unless the public had acquired the legal right to travel thereon. *Champlin v. Morgan*, 20 Ill. 181 (1858). Our supreme court has also written that "[t]he term *'public highway'* includes *public ways* of every description which the public have *a right to use for travel.*" (Emphasis added.) *Mammina v. Alexander Auto Service Co.*, 333 Ill. 158, 167 (1928). The appellate court also stated, "Public ways are commonly termed highways; a private way is either an easement or a customary right." *Schmisseur v. Penn*, 47 Ill. App. 278, 284 (1893).

In more recent contexts, we have also recognized the limited scope of the term "public way." Thus, our courts have held that, although "public highways" under the Illinois Vehicle Code (625 ILCS 5/1—100 *et seq.* (West 2000)) include privately owned parking lots that are actively controlled or maintained by government (*People v. Culbertson*, 258 Ill. App. 3d 294 (1994); *People v. Bailey*, 243 Ill. App. 3d 871, 874 (1993)), they do not include purely private parking lots (*People v. Montelongo*, 152 Ill. App. 3d 518 (1987); *People v. Kissel*, 150 Ill. App. 3d 283, 285-86 (1986), *overruled in part on other grounds, People v. Brown*, 175 Ill. App. 3d 725 (1988); *People v. Jensen*, 37 Ill. App. 3d 1010, 1013 (1976); *People v. Kozak*, 130 Ill. App. 2d 334 (1970)). In Illinois, as elsewhere, mere public accessibility traditionally has been insufficient to make private land a "public way."

Our opinion in *People v. Ward*, 95 Ill. App. 3d 283 (1981), in no way expanded the judicial definition of "public way." In *Ward*, the defendant attacked and beat a woman while they were in the parking lot of a hotel. The defendant was convicted of aggravated battery rather than simple battery because, applying the pertinent enhancing statute, the jury found that, at the time of the offense, either the defendant or the victim was "on or about a public way, public property or public place of *** amusement" (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(b)(8)). *Ward*, 95 Ill. App. 3d at 287. Originally, the information alleged that the defendant committed the offense "about public property." At the jury instructions conference, the trial court allowed the State to amend the information to allege that the offense occurred at a

"place of public accommodation." The court also gave the jury an instruction that incorporated the language of the amended information rather than the original one. *Ward*, 95 Ill. App. 3d at 285.

We held that the amendment was proper because, under the governing statute, the change was one of form only. The statute enhanced battery to aggravated battery if the offense occurred "on or about a public way, *public property or public place of accommodation or amusement*." (Emphasis added.) Ward, 95 Ill. App. 3d at 287. We explained:

> "Obviously, our legislature was of the belief that a battery committed in *an area open to the public, whether it be a public way, public property or public place of accommodation or amusement*, constitutes a more serious threat to the community than a battery committed elsewhere. [Citation.] As we interpret this statutory language, the essential allegation for a charge *** is that the battery occurred in a public area. Whether the property was actually publicly owned and, therefore, 'public property' rather than a privately owned 'public place of accommodation' is irrelevant; what is significant is that the alleged offense occurred in an area accessible to the public." (Emphasis added.) *Ward*, 95 Ill. App. 3d at 287-88.

It is crucial to understand what *Ward* holds and what it does *not* hold. Nowhere does *Ward* state that the hotel parking lot was either a "public way" or "public property." Indeed, according to the passage that we have quoted at length, the private lot was a "public place of accommodation or amusement" but not "public property." *Ward* does not even discuss, much less decide, whether a privately owned parking lot can be a "public way."

*Ward* does state that a "public way" is necessarily open to the public. *Ward*, 95 Ill. App. 3d at 287. But of course that does not imply the converse, *i.e.*, that any area open to the public is necessarily a "public way." Nothing in *Ward* changed the long-standing definition of "public way." Several opinions recognize that *Ward* holds *only* that private property may sometimes be considered a "place of public accommodation or amusement" under the aggravated battery statute. See *People v. Logston*, 196 Ill. App. 3d 96, 99 (1990); *People v. Lee*, 158 Ill. App. 3d 1032, 1035-36 (1987); *People v. Murphy*, 145 Ill. App. 3d 813, 815 (1986).

We acknowledge that several appellate court opinions do say that *Ward* defines "public way" to include any private property accessible to the public. See *People v. Jones*, 288 Ill. App. 3d 293, 297-98 (1997); *People v. Wicks*, 283 Ill. App. 3d 337 (1996); *People v. Pennington*, 172 Ill. App. 3d 641, 644 (1988); *People v. Pugh*, 162 Ill. App. 3d 1030,

1034 (1987). However, by confusing a "public way" with a "place of public accommodation or amusement," these opinions simply misread *Ward*. (*Wicks* similarly errs in stating that *Lee* broadly defines "public way." See *Wicks*, 283 Ill. App. 3d at 341-42.) These opinions also ignore the settled and well-understood meaning of the term "public way." Therefore, we decline to follow *Jones*, *Wicks*, *Pennington*, or *Pugh*.

In arguing for an expansive definition of "public way," the State relies heavily on our opinion in *People v. Rodriguez*, 276 Ill. App. 3d 33 (1995). There, the issue was whether the minor defendant could be prosecuted in adult court for allegedly having delivered illegal drugs while he was in a gas station parking lot. Section 5—4(7)(a) of the Juvenile Court Act of 1987 (705 ILCS 405/5—4(7)(a) (West 1992)) allowed the prosecution in adult court if the offense was alleged to have been committed "on a public way within 1,000 feet of the real property comprising any school, regardless of the time of day or the time of year." 705 ILCS 405/5—4(7)(a) (West 1992). In holding that the private parking lot was a "public way," *Rodriguez* relied heavily—but we believe mistakenly—on *Ward* and *Lee*.

The *Rodriguez* majority conceded that section 5—4(7)(a) spoke only of a "public way" while the aggravated battery statute referred to a "public way, public property or public place of accommodation or amusement." Rodriguez, 276 Ill. App. 3d at 38. However, the majority discounted this difference because it read *Ward* and *Lee* to state that "the key factor in determining whether an aggravated battery occurred is that the offense occurred in an area or place accessible to the public." *Rodriguez*, 276 Ill. App. 3d at 38. Also, because section 5—4(7)(a) was intended to protect children from drug dealers by making the areas near schools "zone[s] of safety," the legislature could not have intended it to reach only offenders "who choose to position themselves on a public thoroughfare maintained by a public entity." *Rodriguez*, 276 Ill. App. 3d at 38.

The dissenting justice in *Rodriguez* argued that the majority had disregarded section 5—4(7)(a)'s plain meaning in favor of the much broader phraseology of the aggravated battery statute. *Rodriguez*, 276 Ill. App. 3d at 42 (McLaren, P.J., dissenting). Citing *Mammina* and *Culbertson*, the dissenting justice concluded that the "public way" plainly means a publicly maintained passageway, road, or street that any citizen has the right to use. Thus, as the gas station was neither publicly maintained nor a passageway, road or street, it was not a "public way." *Rodriguez*, 276 Ill. App. 3d at 41-42 (McLaren, P.J., dissenting). Also, the dissenting justice noted that *Ward* and *Lee* held only that privately maintained parking lots could be "public places of accommodation or amusement" and not that such properties could be

"public ways." *Rodriguez*, 276 Ill. App. 3d 42 (McLaren, P.J., dissenting). Finally, the dissenting justice invoked a familiar maxim of statutory construction, "*inclusio unius est exclusio alterius*," and explained that the legislature's deliberate choice of words reflected its intention to give section 5—4(7)(a) a lesser reach than the aggravated battery statute. *Rodriguez*, 276 Ill. App. 3d at 42-43 (McLaren, P.J., dissenting).

■ We agree with the dissent in *Rodriguez*, and we think its reasoning applies as well to section 407(b)(1) of the Illinois Controlled Substances Act as it does to the similarly phrased section 5—7(4)(a) of the Juvenile Court Act of 1987. In passing each law, the legislature deliberately eschewed broad language it had used elsewhere and chose narrow language with a plain meaning. Courts may not rewrite legislation merely because it seems appropriate to do so. *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 494 (2001). This rule applies with special force when the legislature has deliberately omitted language that it used before in similar or related legislation. *Village of Bloomingdale*, 196 Ill. 2d at 494. Surmising that the General Assembly must have meant what it did not say, the *Rodriguez* majority rewrote the law by inserting terms that the legislature chose to leave out. This was not statutory construction but statutory transmogrification.

Two other considerations compel us to reject *Rodriguez*. First, by equating "public way" with "public way, public property, or public place of accommodation or amusement," *Rodriguez* implies that most of the words in the aggravated battery statute were inserted needlessly. However, the established (and logical) rule is that we must construe a statute so that no term is rendered superfluous or meaningless. *Yang v. City of Chicago*, 195 Ill. 2d 96, 106 (2001). Second, at most, "public way" is ambiguous; one can reasonably give the term the meaning that most courts and commentators have given it for centuries. Ambiguities in criminal statutes are to be construed strictly in favor of the accused. *People v. Eagle Food Centers, Inc.*, 31 Ill. 2d 535, 539 (1964); *People v. Carillo*, 323 Ill. App. 3d 367, 372 (2001). Yet, in violation of this established maxim, *Rodriguez* chooses a very broad construction that favors the State.

■ For all of these reasons, we conclude that *Rodriguez* was wrongly decided. Therefore, we now overrule *Rodriguez*.

We return to the case at hand. To prove defendant guilty as charged of the Class X felony, the State had to prove beyond a reasonable doubt that he committed his offense while he was on a passageway that was controlled or maintained by the government for the general use of the public as a matter of right. We conclude that the State did

not meet its burden. The State's witnesses placed defendant right next to the apartment building's front door, on the concrete porch pad leading up to the door, or in the "stairwell area" of the privately owned and maintained apartment building. At the very most, the evidence *might* allow an inference that defendant stood on the *privately* maintained and controlled walkway when he possessed the bag of cocaine. None of these locations could be considered a "public way." All were private property. Members of the general public went there permissively, not as of right, and there is no evidence that any unit of government controlled or maintained the private property on which defendant committed his offense. Thus, the State did not prove that defendant acted while he was on a public way. Defendant's conviction of the Class X felony cannot stand.

Defendant does not raise any other issues, and he concedes that the evidence is sufficient to convict him of the lesser included offense of unlawful possession, with the intent to deliver, of 1 to 15 grams of a substance containing cocaine (720 ILCS 570/401(c)(2) (West 1998)). Therefore, we do not reverse defendant's conviction outright. However, as defendant now stands convicted of only a Class 1 felony, we must remand this cause so that the trial court may sentence him accordingly.

The judgment of the circuit court of Winnebago County is affirmed as modified, and the cause is remanded for resentencing.

Affirmed as modified and remanded.

BYRNE and KAPALA, JJ., concur.