2019 IL App (1st) 161204
No. 1-16-1204
Opinion filed July 23, 2019

Second Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 14 CR 16710 |
| ALVIN BROWN, | ) ) ) | The Honorable |
| Defendant-Appellant. | ) ) ) | Raymond Myles, Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justice Pucinski concurred in the judgment and opinion.
Justice Mason dissented, with opinion.

**OPINION**

¶ 1 The arresting officer saw Alvin Brown taking a drink of beer while standing in a gas station parking lot and arrested him for violating the Chicago Municipal Code which prohibits drinking on a "public way." Chicago Municipal Code § 8-4-030 (amended at Chi. City Clerk J. Proc. 52958 (May 8, 2013)). Brown had in his pocket a controlled substance and was later tried and convicted for possessing it.

¶ 2 Brown argues that because his arrest was without probable cause, his motion to quash arrest and suppress evidence should have been granted. We agree, and reverse. The gas station

parking lot does not fit within "public way," which the Municipal Code defines as "any sidewalk, street, alley, highway or other public thoroughfare." Chicago Municipal Code § 1-4-090(f) (amended at Chi. City Clerk J. Proc. 44485 (Dec. 12, 2012)). Moreover, the officer lacked a reasonably objective basis for believing that Brown was on the "public way."

¶ 3                                    Background

¶ 4        Three Chicago police officers on routine patrol in an unmarked police car pulled into a gas station located at 76th and Halsted Streets in Chicago. They noticed a group of four men, including Brown, standing in the parking lot. Officer Brendan Roberts saw Brown drinking a beer. Roberts approached Brown and arrested him for violating section 8-4-030(a)(1) of the Municipal Code by "drinking alcohol on the public way" (Chicago Municipal Code § 8-4-030(a)(1) (amended at Chi. City Clerk J. Proc. 52958 (May 8, 2013))). Roberts searched Brown's pants pocket and found a small plastic bag containing one "ecstasy" pill. Brown was charged with possession of a controlled substance under section 402(c) of the Illinois Controlled Substance Act, a Class 4 felony. 720 ILCS 570/402(c) (West 2014).

¶ 5        At the same time, Officer Martin McDonnell searched Brown's codefendant, Louis Foster, and found crack cocaine hidden in his pants.

¶ 6        Both Brown and Foster moved to suppress the drugs found when they were searched, arguing both searches violated the fourth amendment. The State responded that the police officers believed that the ordinance applied to the gas station parking lot as a "public way" and that this was a reasonable mistake of law.

¶ 7        Brown was convicted after a bench trial of possession of a controlled substance and sentenced to two years' probation.

¶ 8                    Motion to Quash Arrest and Suppress Evidence

¶ 9         Chicago police officer McDonnell testified at the hearing on the motion to suppress. On August 30, 2014, McDonnell, Officer Brendan Roberts, and Officer Matthew Kennedy were on routine patrol in an unmarked car. At 12:50 a.m., the officers pulled into a 24-hour gas station. McDonnell saw a group of four or five men standing in the parking lot. Brown was drinking a can of beer. Roberts approached Brown and arrested him for violating a Chicago ordinance by drinking alcohol on the "public way." Roberts searched Brown while McDonnell did a protective pat-down search of Louis Foster. McDonnell found 15 plastic bags of crack cocaine in Foster's pants. McDonnell did not see Foster doing anything illegal before the search.

¶ 10        McDonnell stated the area was "high-crime" and was known for narcotics sales, and in the past there had been "numerous" calls of people with guns. The trial court overruled defense counsel's objections to these answers. McDonnell also stated the officers were on routine patrol and were not responding to any complaints about activity at the gas station.

¶ 11        Officer Roberts searched Brown and found a bag in his pants pocket containing one pill that later proved to be "ecstasy" (benzylpiperazine). When Brown was arrested, there were no warrants, investigative alerts, or calls regarding either Brown or illegal activity in the area. In the past, Roberts had responded to calls of persons with guns and people drinking at the same location. Roberts described the lot as "open" with access for the public to come and go.

¶ 12        The State contended that Brown was properly arrested, thus justifying the search incident to that arrest.

¶ 13        The trial court denied Brown's motion, finding it was "reasonable that most citizens including the police do not clearly understand that gas stations are not public ways giving the

public ingress and egress thereto. Although, this is a mistake of law, it is however reasonable." The trial court noted three factors contributing to the reasonableness of the officers' belief: (i) gas stations cannot hold a liquor license in Chicago (Chicago Municipal Code § 4-60-090 (added Dec. 9, 1992)), (ii) Brown was standing in the parking lot near a car parked next to the gas station vacuum, and (iii) in the past police had received complaints about people drinking and people with guns at the gas station.

¶ 14    The trial court granted Foster's motion to suppress, finding the officers did not see him do anything other than standing near Brown. They did not see him drinking, had no warrants for his arrest, and no information that he had violated the law. Granting Foster's motion to suppress had the substantive effect of dismissing the charges against him. See *People v. Bonilla*, 2018 IL 122484, ¶ 5.

¶ 15                                             Trial

¶ 16    At Brown's bench trial, Officer Roberts testified to essentially the same facts as at the hearing on the motion to suppress. The trial court found Brown guilty of possession of a controlled substance and sentenced him to two years' intensive probation plus $1109 in fines and fees.

¶ 17                                           Analysis

¶ 18    Brown argues that the trial court erred when it denied his motion to quash his arrest and suppress the evidence. Brown asserts his arrest and search violated his fourth amendment rights because his arrest was without probable cause; thus, the evidence obtained as a result must be suppressed as "fruit of the poisonous tree." See *Dunaway v. New York*, 442 U.S. 200, 207, 216 (1979); *Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963). Under the fourth amendment,

every person has a right against unreasonable searches and seizures. U.S. Const., amend. IV. Brown maintains that the arresting officer had an unreasonable belief that Brown committed the offense of drinking on the public way.

¶ 19     On a motion to suppress evidence, the defendant has the burden of producing evidence and proving the search and seizure were unlawful, but once the defendant makes a *prima facie* showing of an illegal search and seizure, the burden then shifts to the State to produce evidence justifying the intrusion. *People v. Martin*, 2017 IL App (1st) 143255, ¶ 18 (citing *People v. Woodrome*, 2013 IL App (4th) 130142, ¶ 16).

¶ 20     In reviewing a trial court's ruling on a motion to suppress evidence, we apply the two-part standard of review in *Ornelas v. United States*, 517 U.S. 690, 699 (1996). Under this standard, we give great deference to the trial court's findings of historical fact and reverse only if against the manifest weight of the evidence. *People v. Almond*, 2015 IL 113817, ¶ 55. A reviewing court, however, assesses the facts in relation to the issues and draws its own conclusions when deciding what relief should be granted. *People v. Pitman*, 211 Ill. 2d 502, 512 (2004). We review *de novo* the trial court's ultimate legal ruling as to whether suppression is warranted. *People v. Holmes*, 2017 IL 120407, ¶ 9.

¶ 21     The facts of Brown's arrest and search are not in dispute. The officers, who were on routine patrol, saw Brown take a sip from a beer while standing in a parking lot outside a 24-hour gas station. The officers then arrested Brown for drinking alcohol "on the public way" and searched Brown and the codefendant. The officers found a plastic bag in Brown's pocket containing one pill that positively tested as a controlled substance.

¶ 22      Did the officers have probable cause for Brown's arrest based on a municipal ordinance? Brown argues the trial court improperly denied his motion to quash his arrest and suppress the evidence because the police officers had no reasonable basis to believe that he violated the Municipal Code prohibiting consumption of alcohol on a "public way." Brown asserts he was standing on private property—the parking lot of a gas station. The State argues the custodial search that resulted in finding contraband was lawful because the officer's mistaken belief that Brown broke the law was objectively reasonable.

¶ 23      The State acknowledges that the gas station parking lot, by definition, was not a "public way" as contemplated by the Municipal Code. The State's brief concedes that the arresting officers' belief that Brown committed a crime was mistaken (as the trial court found) but argues the mistake was reasonable. In oral argument as well, the State conceded the parking lot was not a "public way" as defined in the ordinance. Thus the State has abandoned its position regarding "public way" as argued in the trial court and waived this point on appeal.

¶ 24      The dissent points out that this court is not bound by the parties' concessions (see *People v. Nunez*, 236 Ill. 2d 488, 493 (2010)). *Infra* ¶ 62. But the State's position on appeal is more than simply a concession as the dissent represents. See *People v. Reed*, 2016 IL App (1st) 140498, ¶ 13 (rules of waiver and forfeiture apply to the State). Having waived the issue of the definition of "public way," the State argues the issue not in terms of whether the gas station was a public way but in terms of whether the officer's mistaken belief that it was a public way was reasonable. The trial court specifically noted "most citizens including the police do not clearly understand that gas stations are not public ways," calling the officers' belief that it was a public way reasonable, "although this is a mistake of law." Our focus is on this mistaken belief.

¶ 25 Citing *People v. Relwani*, 2019 IL 123385, the dissent believes that Brown did not meet his burden of proving the gas station parking lot was not a "public way." *Infra* ¶ 70. The supreme court affirmed the trial court's denial of the defendant's petition to rescind the statutory summary suspension of his driver's license as not against the manifest weight of the evidence. *Relwani*, 2019 IL 123385, ¶ 26. The defendant failed to present a *prima facie* case for rescission. See *id.* ("It is certainly not clearly evident from the minimal evidence defendant presented that the trial court should have arrived at the opposite conclusion or that its conclusion was unreasonable, arbitrary, or not based on the evidence.").

¶ 26 But the holding of *Relwani* does not apply here because there the defendant's ability to meet his burden was contested on appeal, while in this case the State does not argue the issue of private property *vis-à-vis* the statutory definition of "public way." Instead, the trial court specifically found the officers' "mistaken belief" was reasonable, and the State only argues reasonableness as follows: "The trial court properly denied defendant's motion to quash arrest and suppress evidence where the totality of the circumstances show[s] that defendant was drinking on a public way was objectively reasonable." In light of the State's waiver, the burden recognized by *Relwani* simply does not apply to Brown.

¶ 27 Even without the State's waiver of this argument, we would reach the same result. We would apply the same analysis to conclude that the parking lot was not the "public way," as contemplated in the ordinance, and further that the officers' belief was unreasonable.

¶ 28                                    Reasonable Mistake of Law

¶ 29 Whether a stop is reasonable depends on the totality of the circumstances. See *People v. Thomas*, 198 Ill. 2d 103, 109 (2001). We view the underlying facts objectively "from the

perspective of a reasonable officer at the time that the situation confronted him or her." *Id.* at 110. The trial court noted three factors as supporting a reasonable belief of the officers: (i) gas stations cannot hold a liquor license in Chicago, (ii) Brown was standing in the gas station parking lot, and (iii) police had received complaints about people drinking and people with guns at the gas station. But none of these factors emerges as dispositive, nor do they together prove the reasonableness of the officers' belief that Brown was breaking any law.

¶ 30 The central question concerns whether the police officers' mistaken belief regarding Brown's violation of the Municipal Code was reasonable. The fourth amendment requires government officials to act reasonably, not perfectly, and gives those officials " 'fair leeway for enforcing the law.' " *Heien v. North Carolina*, 574 U.S. ___, ___, 135 S. Ct. 530, 536 (2014) (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)). But "[t]he Fourth Amendment tolerates only reasonable mistakes, and those mistakes—whether of fact or of law—must be objectively reasonable." (Emphases omitted.) *Id.* at ___, 135 S. Ct. at 539. The subjective understanding of the officer is irrelevant. *Id.* at ___, 135 S. Ct. at 539.

¶ 31 The State asserts Brown was outside the gas station, "where a steady flow of traffic entered and exited," which could lead to a reasonable belief that Brown was drinking on a "public way." The State relies on *People v. Gaytan*, 2015 IL 116223. There, police officers stopped a car with a trailer hitch, believing the Illinois Vehicle Code prohibited a trailer hitch that might obstruct a vehicle's license plate. *Id.* ¶ 1. *Gaytan* followed *Heien*, holding that the seizure, itself, was reasonable because the police officer's vehicle stop was "based on an objectively reasonable, though mistaken, belief that the defendant's conduct was illegal." *Id.* ¶ 52. *Heien* and *Gaytan* recognized that probable cause for a *Terry* stop may exist, despite an arresting officer's "mistake

of law." But, as the Supreme Court stated in *Heien*, "an officer can gain no Fourth Amendment advantage through a sloppy study of the laws he [or she] is duty-bound to enforce." *Heien*, 574 U.S. at ___, 135 S. Ct. at 539-40.

¶ 32      Brown's arrest and search incident to his arrest rested on an unreasonable mistake of law.

¶ 33      The Municipal Code provided guidance to the officers through its specific definitions. Section 8-4-030(a)(1) of the Municipal Code makes it "unlawful for any person to drink any alcoholic liquor as defined by law on any public way or in or about any motor vehicle upon a public way in the city." Chicago Municipal Code § 8-4-030(a)(1) (amended at Chi. City Clerk J. Proc. 52958 (May 8, 2013)). The "Definitions for Code provisions" in section 1-4-090(f) of the Municipal Code defines "public way" as "any sidewalk, street, alley, highway or other public thoroughfare." Chicago Municipal Code § 1-4-090(f) (amended at Chi. City Clerk J. Proc. 44485 (Dec. 12, 2012)).

¶ 34      The cardinal rule of statutory construction requires we ascertain and give effect to the legislature's intent, and the best indicator of intent is the plain and ordinary meaning of the statutory language. *People v. Hardman*, 2017 IL 121453, ¶ 19. We must construe the words and phrases in light of other relevant provisions and not in isolation. *People v. Bradford*, 2016 IL 118674, ¶ 15. We do not depart from a statute's plain language by reading into it exceptions, limitations, or conditions not expressed by the legislature. *Hardman*, 2017 IL 121453, ¶ 31. Moreover, "[c]are must be taken when importing the definition of a term from one statute to another, since 'the context in which a term is used obviously bears upon its intended meaning.' " *Cohen v. Chicago Park District*, 2017 IL 121800, ¶ 22 (quoting *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises, Inc.*, 2013 IL 115106, ¶ 29) (shared-use path not

"road" within meaning of Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/3-107 (West 2012)).

¶ 35 The Municipal Code's definitions aid this court's understanding of the reasonableness or unreasonableness of the alleged violation that was the basis for Brown's arrest in the first place. In other sections of the Municipal Code, we find the City of Chicago Department of Business Affairs and Consumer Protection regulates use of the "public way" by issuing permits and licenses. See Chicago Municipal Code § 2-25-050 (amended at Chi. City Clerk J. Proc. 54734 (June 5, 2013)) ("Powers and duties of the department"); Chicago Municipal Code § 2-25-060 (added Nov. 19, 2008). For example, business owners must obtain a permit to "use the public way or public grounds or any space above or beneath any public way or public grounds." *Id.* Permits must be obtained for structures such as signs, lights, canopies, benches, and the like. Chicago Municipal Code § 10-28-010 (amended at Chi. City Clerk J. Proc. 44485 (Dec. 12, 2012)). This section defines "public way" as having the same meaning ascribed to that term in section 1-4-090(f) entitled "Definitions for Code provisions" and includes "any other public place." *Id.* (citing Chicago Municipal Code § 1-4-090(f) (amended at Chi. City Clerk J. Proc. 44485 (Dec. 12, 2012))). Also, the "Traffic Definitions and General Provisions" section defines "Public way" as "any sidewalk, roadway, alley or other public thoroughfare open to the use of the public, as a matter of right, for purposes of travel, excepting bridle paths." Chicago Municipal Code § 9-4-010 (amended at Chi. City Clerk J. Proc. 54983 (June 5, 2013)). The only nondefined term in section 9-4-010 is "public thoroughfare." See *id.*

¶ 36 "[L]ogic and common sense" play a role in our interpretation of the law. (Internal quotation marks omitted.) *People v. Chatman*, 2016 IL App (1st) 152395, ¶ 34. The parking lot

cannot be categorized as a sidewalk, street, alley, or highway. The only possible justification for Brown's arrest would be if "other public thoroughfare" encompasses the parking lot of a privately owned business.

¶ 37    The Municipal Code specifically defines "public way" and prohibits alcohol consumption in those locales. As the dissent in *People v. Rodriguez*, 276 Ill. App. 3d 33, 43 (1995) (McLaren, P.J., dissenting), stated: "the legislature, by using the term 'public way,' proscribed streets, alleys, roads, parkways, highways, and sidewalks as places where drug trafficking would result in stiffer penalties. If the legislature desired to include public property, public accommodation, or public amusement in the proscription in the Juvenile Court Act, it could easily have inserted these terms. The legislature did not do so. This court may not do so." We do not read the phrase "public thoroughfare" contained in the Municipal Code as including gas station or convenience store parking lots.

¶ 38    In Chicago, a separate section of the Municipal Code makes the department of streets and sanitation responsible for "supervision of the sanitation of the public ways of the city and the lighting thereof except where such improvement is to be paid for wholly or in part by special assessment; the cleaning of public ways and the removal of garbage, refuse and waste, the removal of any article or thing which may encumber or obstruct any public way See Chicago Municipal Code § 2-100-030 (amended July 19, 2007) (chapter 2-100, titled "Department of Streets and Sanitation"; article I, titled "Organization and Functions"; and section 2-100-030, titled "Commissioner-Powers and duties").

¶ 39    Even the snow removal ordinance would not apply to the gas station's parking lot. See Chicago Municipal Code § 10-8-180 (amended Oct. 28, 2015) ("Snow and ice removal"). And

cutting through a gas station or strip mall parking lot to avoid a traffic signal is prohibited, as anyone who has a driver's license learns. See 625 ILCS 5/11-305(b) (West 2014) ("It is unlawful for any person to leave the roadway and travel across private property to avoid an official traffic control device.").

¶ 40    Further, we take judicial notice of the Chicago Police Department directives published on the Chicago Police Department Directives System website. Chi. Police Dep't, *The First Amendment and Police Actions* (Apr. 19, 2012), http://directives.chicagopolice.org/directives/ data/a7a57be2-1287e496-14312-87ee-09b7a8a4b7d34441.pdf?hl=true    [https://perma.cc/D3FC-L59G] ("General Order G02-02"); see *Azzone v. North Palos Fire Protection District*, 105 Ill. App. 3d 877, 879 (1982) ("The rules and regulations of defendant Fire District were not made part of the record, but we will take judicial notice of them." (citing *Sye v. Wood Dale Fire Protection District No. 1*, 43 Ill. App. 3d 48, 50 (1976))).

¶ 41    General Order G02-02 reads, "The public way generally includes public property held open to the public such as city parks, public streets, and sidewalks. The public way does not include privately-owned property, such as the United Center, and publicly-owned property not open to the public, such as the working area of a police facility." Chi. Police Dep't, *The First Amendment and Police Actions*, *supra*.

¶ 42    The directives glossary has slightly different wording that is consistent with the ordinance's definition's language. "Public Way" means "Any sidewalk, roadway, alley, or public thoroughfare open to the use of the public as a matter of right for the purposes of travel, excepting [bridle] paths." Chi. Police Dep't, *Glossary of Terminology*, http://directives.chicagopolice.org/ directives/data/ContentPackages/Core/Glossary/glossary.html?content=a7a551ac-12434b53-

c5c12-4ef3-0bfda1e4198789ec.html?ownapi=1 (last visited July 11, 2019) [https://perma.cc/ LW2H-BNWW]. The definitions in the ordinance and in the police department's own directives need no clarification; both are specific and unambiguous.

¶ 43    One last point: the dissent characterizes these directives as "evidentiary matters that were not presented to the trial court." *Infra* ¶ 74. The directives glossary definition of "Public Way" is not a piece of evidence; rather, the directives provide context for what a police officer is expected to know. We are not asking police officers to "analyze cases involving analogous statutes or engage in statutory interpretation in executing their everyday duties." *Infra* ¶ 72.

¶ 44                                     Criminal Statutes

¶ 45    We find no case law interpreting the Municipal Code's reference to "public thoroughfare." In its brief, the State resorted to interpreting the language in Illinois criminal statutes. But, rather than help the State's position regarding the reasonableness of the police officers' mistaken belief, the criminal cases aid us in finding the unreasonableness of officers' belief.

¶ 46    Criminal statutes have enhanced charges depending on the situs of the offense. "Public way" as a legal term of art can be found in the unlawful use of weapons statute (720 ILCS 5/24-1(a)(4), (c)(2) (West 1994)), the aggravated battery statute (*id.* § 12-4(b)(8)), and the automatic transfer provision of the Juvenile Court Act of 1987 (705 ILCS 405/5-4(7)(a) (West 1994)). *People v. Jones*, 288 Ill. App. 3d 293, 297 (1997). For example, the aggravated battery enhancement provides a person commits aggravated battery if he or she either " '[i]s, or the person battered is, on or about a public way, public property or public place of accommodation or amusement.' " *People v. Ward*, 95 Ill. App. 3d 283, 287 (1981) (quoting Ill. Rev. Stat. 1979, ch.

38, ¶ 12-4(b)(8)). *Jones* found that the phrase "on a public way" as used in the enhancement provision was not "mere surplusage." *Jones*, 288 Ill. App. 3d at 298.

¶ 47    And courts have viewed public maintenance of a parking lot as one determinative factor. The court in *People v. Kozak*, 130 Ill. App. 2d 334, 334-36 (1970), held a grocery store parking lot was not a "highway" as used in statute (Ill. Rev. Stat. 1967, ch. 95½, § 1-121)—the parking lot was owned by a nonpublic body and was not maintained by any governmental body. But where the evidence demonstrated public maintenance of a lot, courts have found a public highway. See *People v. Bailey*, 243 Ill. App. 3d 871 (1993) (municipal parking lot publicly maintained and posted as open for use by public was "highway" for purposes of implied consent statute (Ill. Rev. Stat. 1991, ch. 95½, ¶ 11-501.1(a), (c))); *People v. Culbertson*, 258 Ill. App. 3d 294, 297 (1994) (Metra train station parking lot maintained by municipality was "public highway"); *People v. Helt*, 384 Ill. App. 3d 285 (2008) (publicly maintained parking lot open to use by public was "highway" even if privately owned).

¶ 48    As stated in *Ward*, 95 Ill. App. 3d at 287, "[o]bviously, our legislature was of the belief that a battery committed in an area open to the public, whether it be a public way, public property or public place of accommodation or amusement, constitutes a more serious threat to the community than a battery committed elsewhere." In other words, an already illegal act—battery, unlawful use of a weapon, drug possession—presents a greater threat to society when done in a public place. Protection of the general public is the public policy basis for criminal statutes proscribing illegal acts. From this policy flows interpretation of the statutes that criminalize certain behaviors.

¶ 49        In *Ward*, the Second District reached the issue in the context of the aggravated battery statute's enhancement based on the situs of the alleged offense—a car in the parking lot of a Holiday Inn. *Id.* at 285. The court broadly construed the statutory language to encompass any battery committed in a public area, reasoning that whether the property was in fact publicly owned or a privately owned "public place of accommodation" was irrelevant. *Id.* at 287-88. Rather, "what is significant is that the alleged offense occurred in an area accessible to the public." *Id.* at 288. The legislative intent expressed in the legislative committee comments was to encompass any area accessible to the public because a battery in a public area was a more serious threat to the community than a battery committed elsewhere. *Id.* at 287 (citing Ill. Ann. Stat., ch. 38, ¶ 12-4(b)(8), Committee Comments-1961, at 465 (Smith-Hurd 1979)).

¶ 50        The Second District applied the automatic transfer provision in the Juvenile Court Act of 1987 to a juvenile charged with delivery of a controlled substance occurring in a gas station parking lot that was within 1000 feet of a school. See *Rodriguez*, 276 Ill. App. 3d 33; 705 ILCS 405/5-4(7)(a) (West 1994). The minor argued that the delivery was not on a "public way." *Rodriguez*, 276 Ill. App. 3d at 35. Relying on *Ward* and other parking lot cases, the court in *Rodriguez* found the gas station parking lot was sufficiently "accessible to the public" to constitute a public way for purposes of the automatic transfer provision. *Id.* at 38-39.

¶ 51        The dissent in *Rodriguez*, however, pointed out that "[o]ur task is not to determine whether a gas station is a 'public way, public property or public place of accommodation or amusement,' as the majority does by analogizing this case to cases involving aggravated battery." *Id.* at 42 (McLaren, P.J., dissenting) (quoting 720 ILCS 5/12-4(b)(8) (West 1994) (the aggravated battery statute)).

¶ 52        And in *People v. Dexter*, 328 Ill. App. 3d 583, 589 (2002), the dissenting justice from *Rodriguez* questioned the majority's ruling: "*Ward* does not even discuss, much less decide, whether a privately owned parking lot can be a 'public way.' " *Dexter* held the State did not prove beyond a reasonable doubt that the defendant committed the offense while he was on a passageway that was controlled or maintained by the government for the general use of the public as a matter of right, a "public way." *Id.* at 591-92.

¶ 53        Brown sustained his burden by establishing a *prima facie* case. He was not on the public way but drinking a beer while standing on the ground of a gas station parking lot, near a car parked next to the gas station vacuum. If Brown had been in a different location, such as the sidewalk, street, or alley, then the Municipal Code would have been violated. See *People v. Ayres*, 228 Ill. App. 3d 277, 278 (1992) ("undisputed that both defendants were only observed driving on privately owned parking lots").

¶ 54        Simply put, drinking a can of beer on private property is not illegal in Chicago for individuals at least 21 years old. To illustrate, in *People v. Caliendo*, 84 Ill. App. 3d 987, 992 (1980), the legality of the defendant's conduct was not in doubt; committing a battery was prohibited either as a misdemeanor or as a felony, which were "two different forms of prohibited activity." The same cannot be said about alcohol consumption, which is age-restricted but generally not illegal. One need not be a police officer to know the difference between a private property and public property or between a private thoroughfare and a public thoroughfare. The gas station parking lot in which Brown was standing does not constitute a "public way" as defined by the ordinance. The State's attempt to equate the drinking prohibition with the criminal statutory enhancements fails.

¶ 55                                                            Fines and Fees

¶ 56          Reversal obviates the need for this court to address Brown's argument regarding his fines

and fees.

¶ 57          Reversed.

¶ 58          PRESIDING JUSTICE MASON, dissenting:

¶ 59          I respectfully dissent. Although I agree that the gas station parking lot where Brown was

arrested is likely not a "public way" within the meaning of the Municipal Code, Brown did not

sustain his burden to prove that fact in the trial court. Instead, he has asked us to take "judicial

notice" of evidence for the first time on appeal that he should have presented during the hearing

on his motion to suppress. The State properly objects to this tactic, and we should not condone it.

Judicial notice is not an appropriate mechanism for relieving a defendant of the burden of proof

on a motion to suppress, and because Brown did not sustain his burden in the trial court, we

should affirm. Further, I disagree with the majority's analysis of the reasonableness of the

arresting officer's belief that Brown was on a public way at the time of his arrest.

¶ 60          Brown was arrested as he drank beer in the parking lot of a gas station and was cited with

a violation of the Municipal Code that prohibits alcohol consumption on a "public way" (Chicago

Municipal Code § 8-4-030 (amended at Chi. City Clerk J. Proc. 52958 (May 8, 2013))), defined

as "any sidewalk, street, alley, highway or other public thoroughfare." Chicago Municipal Code

§ 1-4-090(f) (amended at Chi. City Clerk J. Proc. 44485 (Dec. 12, 2012)). He filed a motion to

quash his arrest and suppress the controlled substance recovered from his person, the latter

serving as the basis for the conviction from which he appeals. The only evidence Brown

submitted regarding the site of his arrest was that (i) he was standing in a gas station parking lot

and (ii) the arresting officer believed Brown was on a "public way" because "[i]t's an open lot," there was "access to the public to come and go," and police had responded to numerous calls, both from gas station employees and citizens, regarding people drinking at that location.

¶ 61     After Brown rested, the State moved for a directed finding, arguing that (i) Brown was, in fact, on a "public way" as that phrase has been interpreted in *People v. Pugh*, 162 Ill. App. 3d 1030, 1034 (1987) (finding that parking lot adjacent to private apartment building qualified as a "public way" for purposes of the aggravated battery statute) and (ii) even if the court believed that the gas station parking lot was not a "public way," the officer's belief that it was should be found to be a reasonable mistake of law. Defense counsel argued that, because *Pugh* was not a Municipal Code violation case, its discussion of whether a parking lot constituted a "public way" was not controlling and that a case from the Second District—*People v. Dexter*, 328 Ill. App. 3d 583, 592 (2002)—specifically determined that defendant's conviction for possession of a controlled substance while on a "public way" could not be sustained because defendant was next to the front door or in the stairwell area of a private apartment building. Brown argued that *Dexter* was the better-reasoned decision and should be followed by the trial court. Counsel for the parties engaged in an extended colloquy with the trial judge about what authority the court was obligated to follow when the First District had ruled on a particular issue and another appellate district reached a different result. The court denied the State's motion for a directed finding but ultimately concluded that the officer's belief that Brown was on a public way when he was arrested was reasonable and, therefore, did not violate the proscription against unreasonable searches and seizures. Brown's motion to suppress was denied.

¶ 62    Here, the State concedes that the gas station parking lot was private property and chooses to focus instead on the reasonableness of the arresting officer's belief that the lot was part of the public way. But the State's concession—which does not bind us (see *People v. Nunez*, 236 Ill. 2d 488, 493 (2010))—does not address whether Brown, in fact, sustained his burden on the motion to suppress.

¶ 63    It is important to discuss the burden of proof on Brown's motion to suppress, since identification of the party with the burden can be dispositive in a case where the record is unclear or incomplete. On this issue, the supreme court's recent decision in *People v. Relwani*, 2019 IL 123385, is relevant. The petitioner in *Relwani*, charged with driving under the influence of alcohol (DUI), filed a petition to rescind the statutory summary suspension of his driver's license, claiming that, at the time of his arrest, he was in his running vehicle in a privately owned Walgreens parking lot. *Id.* ¶ 4. At the hearing on the petition, Relwani was the only witness, and the sum total of his testimony was that he was in his car in the Walgreens parking lot. *Id.* ¶ 5.

¶ 64    Our supreme court found that the petitioner failed to make out a *prima facie* case that his arrest did not occur on a "public highway," as required under the Illinois implied consent statute. (625 ILCS 5/11-501.1 (West 2016)). The court began its analysis by noting that what appeared to be an obvious conclusion, *i.e.*, that a parking lot is not a "public highway," was not necessarily the case: "While on its face the idea that a parking lot can be a 'public highway' may seem to be easily dismissed, '[a] parking lot that is publicly maintained and open to use by the public for vehicular travel will constitute a "highway," even if the parking lot is on privately owned property.' " *Relwani*, 2019 IL 123385, ¶ 12 (quoting *People v. Helt*, 384 Ill. App. 3d 285, 288 (2008)).

¶ 65    In order to support rescission of the summary suspension of his license, the court noted it was the petitioner's burden to disprove that the arresting officer had reasonable grounds to believe that he was driving or in actual physical control of an automobile on a highway while under the influence alcohol, drugs, or both. *Id.* ¶ 15. Petitioner argued that his burden to make out a *prima facie* case was satisfied by evidence supporting the inference that he was in a private parking lot and that the State failed to rebut this presumption by providing any evidence of public ownership or maintenance. *Id.* ¶ 16. But in order to make out a *prima facie* case, defendant " 'has the primary responsibility for establishing the factual and legal bases' for the requested action." *Id.* ¶ 17 (quoting *People v. Brooks*, 2017 IL 121413, ¶ 22). The court found that the inference the petitioner asked the court to draw from the sole fact that he was in a Walgreens parking lot was insufficient to make out a *prima facie* case. Because the relevant statute defined a "public highway" as one that is both "publicly maintained" and open to use by the vehicular public (625 ILCS 5/1-126 (West 2016)), "defendant's mere reference to 'Walgreens,' without more, establishes nothing about either the identity of the entity that maintained the lot or the public's use of the lot." *Relwani*, 2019 IL 123385, ¶ 23. The court concluded that the trial court's finding that the petitioner had failed to establish a *prima facie* case was not contrary to the manifest weight of the evidence: "It is certainly not clearly evident from the minimal evidence defendant presented that the trial court should have arrived at the opposite conclusion or that its conclusion was unreasonable, arbitrary, or not based on the evidence." *Id.* ¶ 26.

¶ 66    The court observed that the petitioner could have sustained his burden by introducing readily available evidence that, for example, signs on the property indicated that it was privately owned. *Id.* ¶ 29. But simply because the inference petitioner asked the court to draw was

reasonable, the court saw no reason why it "should reverse course now and reallocate a burden that has long been placed on the party bringing a summary suspension rescission action to provide sufficient evidence on each of the required elements needed to make a *prima facie* case." *Id.* ¶ 28.

¶ 67     In the context of this case, *Relwani* provides important guidance on the nature of a defendant's burden on a motion to suppress. Because Brown was arrested without a warrant, the State was required to articulate the basis for his arrest, which it did: he was arrested for drinking on a public way. It was then Brown's burden to demonstrate that he was not on a public way at the time of his arrest. Brown introduced no evidence to satisfy this burden.

¶ 68     Defendants moving to quash arrest and suppress evidence have long borne both the initial and ultimate burden to demonstrate entitlement to that relief. *Brooks*, 2017 IL 121413, ¶ 22; *People v. Walter*, 374 Ill. App. 3d 763, 765 (2007). Like the petitioner in *Relwani*, Brown offered nothing more in the way of evidence other than the fact that he was in the parking lot of a gas station. He contended, apparently as a matter of law (because he presented no evidence on the issue), that the Municipal Code's reference to drinking on a "public way" was susceptible to only one interpretation and that interpretation excluded privately owned property from its ambit, notwithstanding that the property where he was arrested was open to and used by the public 24 hours a day. Under *Relwani*, that argument is insufficient to satisfy Brown's burden to show that he was not on the public way at the time of his arrest.

¶ 69     As the majority concedes, no court in Illinois has addressed the meaning of the Municipal Code's prohibition against drinking alcohol on a "public way." So the majority's extended discussion of principles of statutory construction may point to the proper construction of the Municipal Code, but it does not resolve the central issue of whether the arresting officer

reasonably believed that Brown was on the public way. And although it may appear, as in *Relwani*, that a private parking lot would not be a public way, we must bear in mind whose burden it was to establish that fact. Nothing in the Municipal Code itself specifically excludes from the definition of public way a business parking lot accessible to the public 24 hours a day, given that the Municipal Code defines "public way" as including "public thoroughfare[s]." Chicago Municipal Code § 1-4-090(f) (amended at Chi. City Clerk J. Proc. 44485 (Dec. 12, 2012)). And certainly if the petitioner in *Relwani* could not sustain his burden to make out a *prima facie* case that a Walgreens parking lot was not a "public highway" simply by testifying that that was where he was arrested, Brown's evidence that the gas station parking lot was not a "public way" must be deemed equally deficient to sustain his burden of proof on the motion to suppress.

¶ 70    The authorities relied on by Brown reveal a split of authority as to whether the State can sustain its burden to prove beyond a reasonable doubt that certain conduct took place on a "public way" for purposes of enhancing the offense with which a defendant is charged by showing that the defendant was in an area on private property that was accessible to the public. But we are not concerned here with the State's heightened burden of proof at a criminal trial; this case concerns the defendant's burden on a motion to suppress. And that context clearly makes a difference. *Relwani*, which drew an analogy between the standards of review on petitions to rescind summary suspensions and motions to suppress, held that a party cannot sustain the burden to demonstrate that his conduct occurred on private property simply by asking the court to infer that it did. *Relwani*, 2019 IL 123385, ¶¶ 18, 23. And as the record reflects, that is all Brown asked the trial court to do. Consequently, because Brown did not sustain his burden to present the trial court

with evidence that he was not on a public way at the time of his arrest, his motion to suppress was properly denied. Therefore, notwithstanding the State's concession that, as a matter of statutory construction, the gas station parking lot was not a "public way," because we may affirm on any ground appearing the record (*People v. Johnson*, 208 Ill. 2d 118, 132 (2003)), Brown's failure to sustain his burden on the motion to suppress warrants affirmance.

¶ 71      Even if I accepted the State's concession that Brown was not drinking on the public way at the time of his arrest, I would nevertheless affirm. As part of his case in the trial court, Brown offered the testimony of his arresting officer that he believed Brown was on the public way because the parking lot was open and the public had unrestricted access to it. That was all the trial court heard in terms of evidence regarding the officer's belief. The remainder of Brown's argument on the motion to suppress consisted of attempting to persuade the trial court to accept case law from another appellate district holding that a defendant charged with possession of narcotics was not on a "public way" when he was at the entrance or near the stairwell of a private building.

¶ 72      But the case law Brown relied on in the trial court and continues to rely on here does not compel the conclusion that the officer's belief was unreasonable. In the trial court, Brown took the position that whether the arresting officer's belief was reasonable turned on which of conflicting decisions from our court the trial court should follow. But although *Dexter* disagreed with *Pugh*, it did not overrule that decision, nor could it. See *Illinois Emcasco Insurance Co. v. Nationwide Mutual Insurance Co.*, 393 Ill. App. 3d 782, 786 (2009) (appellate court decision is not binding on other appellate districts). Ultimately, the debate about what authority is better reasoned or which decision a trial court in Cook County must follow is irrelevant to the issue of

whether decisions from our court can support a police officer's reasonable belief. As far as I am aware, no case requires police officers to resolve conflicts in appellate decisions or to follow the decision of an intermediate appellate court outside their jurisdiction. Nor does any case require police officers to analyze cases involving analogous statutes or engage in statutory interpretation in executing their everyday duties. And finally, given the lack of any resolution of the conflict between *Dexter* and *Pugh* by our supreme court, it is unclear on what basis the arresting officer's belief that Brown was drinking on a "public way" can be deemed unreasonable as a matter of law, particularly since the officer's testimony to that effect was introduced as part of Brown's case in chief on his motion to suppress.

¶ 73  This brings me to the majority's decision to allow Brown to cite on appeal Chicago Police Department directives, which he claims bear on the reasonableness of the arresting officer's belief. It is undisputed that this evidence was available to Brown at the time of the hearing and was not presented to the trial court. It is also obvious that it bears on the factual determination as to whether the officer's belief that Brown was consuming alcohol on a public way was reasonable. I could quibble with the majority's conclusion that these directives demonstrate that the arresting officer's belief that Brown was on the public way was unreasonable—*i.e.*, is telling officers that the United Center itself is not a "public way" the equivalent of telling them that the United Center parking lot shares the same status? But that aside, whatever their import, this evidence and these arguments should have been presented to the trial court during the hearing on Brown's motion to suppress.

¶ 74  It is invariably the case that arguments based on facts outside the record on appeal are improper. *People v. Woolley*, 178 Ill. 2d 175, 204 (1997) (noting that it is well-settled that

arguments that rely on matters outside the record may not be considered on appeal); *Paluch v. United Parcel Service, Inc.*, 2014 IL App (1st) 130621, ¶ 23 (same). The majority cites no case allowing a party to sustain its burden of proof by asking a reviewing court to take judicial notice of evidentiary matters that were not presented to the trial court. See *People v. James*, 2019 IL App (1st) 170594, ¶ 15 ("The State asks us to take judicial notice of Department of Corrections' records, but that does not change the fact that this information was not properly presented as evidence at trial. The issue here is not what the State could have proved at trial but what the State actually did prove at trial." (citing *People v. Jones*, 2017 IL App (1st) 143718, ¶ 21)). Evidence regarding the police department's directives was part of Brown's burden in the trial court that bears directly on the arresting officer's reasonable belief that Brown was on a public way at the time of his arrest. Brown failed to satisfy that burden, and the majority improperly allows him to avoid that failure by filling the evidentiary void with "judicial notice." See *supra* ¶ 40. The case the majority cites, *Azzone v. North Palos Fire Protection District*, 105 Ill. App. 3d 877, 879 (1982), found only that the reviewing court could take judicial notice of the type of administrative hearing a firefighter was entitled to prior to his dismissal. Neither that case, nor any other reported decision, allows a party to substitute judicial notice for evidence the party was required to present to sustain that party's burden of proof. And by relying on these directives to reverse the trial court's factual determination to which they relate, the majority violates the well-settled principle that although we may affirm a ruling on a motion to suppress on any ground appearing in the record (*Johnson*, 208 Ill. 2d at 132), it is improper to reverse such rulings based on new matters or arguments presented for the first time on appeal (see *People v. Estrada*, 394 Ill. App.

3d 611, 626 (2009) (where State appealed the grant of defendant's motion to quash arrest and suppress evidence, State forfeited argument raised for the first time on appeal)).

¶ 75        I would affirm the denial of Brown's motion to suppress, and therefore, I respectfully dissent.

---

**No. 1-16-1204**

---

| | |
|---|---|
| **Cite as:** | *People v. Brown*, 2019 IL App (1st) 161204 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 14-CR-16710; the Hon. Raymond Myles, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and Katie Anderson of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Paul Castiglione, Assistant State's Attorneys, of counsel), for the People. |

---